Joseph Anthony
**DiTOMMASO, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 49S00–8812–CR–958.**

Supreme Court of Indiana.

Feb. 14, 1991.

Kenneth T. Roberts, Roberts & Bishop, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Joseph Anthony DiTommaso ("DiTommaso") was convicted of Murder on May 25, 1988, following a jury trial in Marion County Superior Court, Criminal Division, Room 3. He presents the following three consolidated issues for review in this direct appeal:

1) Whether the trial court erred in denying defendant's Motion to Suppress;

2) Whether the trial court erred in not allowing a continuance or recess in order to allow DiTommaso to present three witnesses and whether DiTommaso's counsel was ineffective for failing to subpoena two of them; and

3) Whether the evidence was sufficient to support the verdict.

The evidence produced at trial showed that DiTommaso killed his 23–day-old daughter, Robyn Henthorn ("Robyn"), on April 3, 1988, when the mother, April Henthorn ("April"), at DiTommaso's request, left their apartment to do laundry. When April returned ten minutes later she found DiTommaso and the baby on the couch. DiTommaso said something was wrong with "your" baby. April turned her over and found that she was discolored, making

gurgling noises and not breathing. April ordered DiTommaso to give the baby mouth-to-mouth resuscitation while she telephoned for an ambulance.

Doctors later discovered that Robyn had a broken arm (probably caused by violent twisting) and multiple skull fractures (probably caused by being hit or hitting a flat surface such as a wall, floor or table top). After the baby died, the physician who performed some of the emergency care for the baby filed a 310 Form to report suspected child abuse to the police. That same physician later relayed information she received from a conversation with April and DiTommaso to Det. Reginald Roney of the Marion County Sheriff's Department.

Later that evening, Det. Roney called DiTommaso, April, and her parents to the Marion County Jail for questioning. After speaking with April's parents, Det. Roney and Lt. Joie Davis interviewed DiTommaso. DiTommaso told several different stories before admitting he killed Robyn. The officers obtained a tape recorded confession from DiTommaso and then arrested him.

### I. *Admissibility of Confession Evidence*

 DiTommaso first contends that the trial court erred in denying his motion to suppress his taped statement because it was the fruit of an illegal arrest which lacked the requisite probable cause. The State responds that this cannot be a basis for reversal because in the proceedings at trial following the hearing on defendant's motion to suppress, the taped statement was never introduced into evidence. Therefore, the State argues, no prejudice resulted. However, this response ignores the fact that Det. Roney was permitted to testify about the obtainment and substance of DiTommaso's confession. This testimony regarding DiTommaso's confession also would be inadmissible "fruit" of an illegal arrest, if the arrest were, in fact, illegal. *Wong Sun v. United States* (1963), 371 U.S. 471, 484, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441, 453.

Probable cause for arrest exists when facts and circumstances known to the officer at the time of arrest would warrant a reasonable person to believe that a crime

had been committed by the suspect. *Henry v. United States* (1959), 361 U.S. 98, 100, 80 S.Ct. 168, 170, 4 L.Ed.2d 134, 137; *Pawloski v. State* (1978), 269 Ind. 350, 352–53, 380 N.E.2d 1230, 1232. The amount of evidence required to satisfy the probable cause test must be determined on a case-by-case basis. *Pawloski*, 269 Ind. at 355, 380 N.E.2d at 1233.

After finishing his investigation at the hospital, Det. Roney called the victim's family down to his office for questioning. The family, including DiTommaso, voluntarily went to Roney's office. Therefore, DiTommaso could not be said to have been under arrest at that time. After speaking with April's parents for fifteen minutes, Roney and Davis questioned DiTommaso. At some point in the interview, Roney admitted, DiTommaso would not have been free to go. However, after informing DiTommaso of his rights and engaging in small talk at the beginning of the interview, Roney asked DiTommaso if he had been with the baby all day. DiTommaso answered "yes" and said April went out twice that day, corroborating April's story as told to Roney by Dr. Wappner. DiTommaso then began telling several unbelievable versions of what must have caused the baby's injuries. From these facts, probable cause for arrest clearly existed at the time that Roney told DiTommaso that he was not free to leave—i.e., arrested.

Finally, DiTommaso argued at trial that he was not informed of his rights at the time of questioning or that questioning continued after he asked that it be stopped. This argument fails in light of Roney's testimony to the contrary, the signed waiver of rights form, and DiTommaso's recorded statement.

No error is presented on the issue of the admissibility of Det. Roney's testimony and/or DiTommaso's statement.

### II. *Denial of Motion for Continuance and Ineffectiveness of Counsel*

 DiTommaso next argues it was error for the trial court to deny his motion for continuance in order to secure the attendance of three witnesses, two of whom

were not subpoenaed. Defense counsel wanted a continuance or recess to procure the testimony of Smith and Warrick who allegedly were expected to testify about DiTommaso's relationship with April and his general inability to control his temper. Their testimony, according to trial counsel, was necessary to support the giving of a voluntary manslaughter instruction so that the jury might find him guilty of voluntary manslaughter rather than murder. In addition, DiTommaso maintains his trial counsel was ineffective for failing to subpoena these two witnesses. Defense counsel also wanted the continuance or recess in order to procure the testimony of Dr. Eugene S. Turrell, a subpoenaed witness who had not seen DiTommaso since 1985 (more than two years before the alleged crime and the trial). Dr. Turrell was represented to the trial court as a witness who was expected to testify as to DiTommaso's state of mind at the time of the commission of the alleged crime.

In *Schlacter v. State* (1984), Ind., 466 N.E.2d 1, this Court held that similar testimony in a robbery prosecution was inadmissible. As in DiTommaso's case, Schlacter first tendered an insanity defense but withdrew it prior to trial. At trial Schlacter wanted to introduce testimony by a doctor and relatives concerning his prior mental instability so that the jury might find him guilty of criminal recklessness rather than robbery. This Court stated:

> The question of a person's criminal intent at the time of the commission of a crime not related to an issue of insanity is a direct question of fact for the jury and not a proper subject for expertise or opinion. *Simpson v. State* (1978), 269 Ind. 495, 381 N.E.2d 1229. A psychologist's testimony in this regard would have been nothing more than hearsay and was not necessary as an aid for the jury's determination of the issue of the presence or absence of criminal intent. *Simpson, supra.*
>
> Of like legal import was the rejected testimony of appellant's relatives which described past episodes in which he would act in a violent manner towards one of them, then suddenly stop, and

later act as though nothing had happened, and claim no recollection of those events. Such testimony would not have provided the jury with information useful in determining whether appellant had the requisite criminal intent during the alleged robbery of the liquor store.

*Id.* at 3. This principle is applicable to witnesses Smith, Warrick and Terrell. The trial court properly held that their testimony concerning DiTommaso's relationship with the child's mother, prior instances of a lack of self control, and opinion as to his state of mind two years after he last saw the witness was inadmissible because such testimony simply was not relevant to prove DiTommaso's state of mind at the time of the death of Robyn.

Because the testimony of these three witnesses, had they been available to testify, was inadmissible, DiTommaso's claim of ineffective assistance of counsel must also fail because he was not prejudiced by defense counsel's failure to subpoena Smith and Warrick. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

The trial court committed no error in denying the motion for continuance or recess in order to procure inadmissible testimony.

### III. *Sufficiency of the Evidence*

DiTommaso's last argument is that the jury's verdict was not supported by sufficient evidence. DiTommaso concedes that when sufficiency of evidence is challenged on appeal, the reviewing court considers only the evidence most favorable to the verdict and the reasonable inferences flowing therefrom. If there is substantial evidence of probative value to support the finding of guilt beyond a reasonable doubt, the conviction will stand. *Mahla v. State* (1986), Ind., 496 N.E.2d 568, 572. However, DiTommaso argues that the Court must find that the evidence is not sufficient if the Court is confronted with "inherently improbable" testimony, or coerced, equivocal, wholly uncorroborated testimony of "incredible dubiosity," citing *Bedwell v. State* (1985), Ind., 481 N.E.2d 1090, 1092.

DiTommaso does not specify which testimony he finds to be inherently improbable, coerced, equivocal or wholly uncorroborated, and the record does not reveal any testimony of such character. April Henthorn testified she left DiTommaso with the baby for about ten minutes and when she returned, the baby was cyanotic, gurgling, and not breathing. Dr. Wappner testified as to her suspicions of child abuse after her examination of Robyn. Det. Roney testified that he suspected DiTommaso after speaking to several witnesses. Finally, DiTommaso's confession corroborates what all the other witnesses stated in their testimony. There was sufficient evidence to support the verdict.

The trial court is affirmed.

SHEPARD, C.J., DeBRULER, GIVAN and DICKSON, JJ. concur.