Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED

May 17 2012, 9:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MARVIN L. BOATRIGHT, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )     No. 49A02-1108-CR-729 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1006-FC-43912

**May 17, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Marvin L. Boatright ("Boatright") was convicted of forgery[1] as a Class C felony, for having signed a Certificate of Death as "Funeral Director" after his funeral director's license was suspended. The trial court denied his motion to correct error. Boatright appeals, contending that evidence of his intent to defraud was insufficient to support his forgery conviction.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2007, Boatright was a licensed funeral director and the owner of the Marvin L. Boatright Funeral Service ("Funeral Home"), located at 2163 North Illinois Street in Indianapolis. On October 4, 2007, Boatright appeared before the State Board of Funeral and Cemetery Service ("Board") for a disciplinary hearing on the Indiana Attorney General's petition for suspension of Boatright's funeral director's license ("License").[2] Tracy Hicks ("Hicks"), who had worked for the Indiana Professional Licensing Agency for twenty-six years, was the Board's Director and presided over the hearing. Evidence was presented at the hearing, after which, the Board orally informed Boatright of its decision to suspend his License indefinitely with no right to petition for reinstatement for six months. The Board also informed Boatright that it would render a written ruling and order, and that his License would be suspended from the date of the written order.

---

[1] *See* Ind. Code § 35-43-5-2(b).

[2] A funeral home and a funeral director must each be licensed. A funeral home license is specific to the location and is issued pursuant to Indiana Code section 25-15-4-1. While a funeral director's license is specific to the individual and is issued pursuant to Indiana Code section 25-15-4-3. The license at issue was Boatright's individual funeral director's license. The Board did not seek to take any action against the license of the Funeral Home.

2

The Board's written order ("the Order") suspending Boatright's License was issued on October 25, 2007. The Order restated the Board's oral decision that, on that date, Boatright's License was suspended indefinitely with no right to petition for reinstatement for six months. The Order further informed Boatright that he was required to obtain ten hours of continuing education relating to funeral directors and funeral homes in addition to the ten hours required by law.

A copy of the Order was sent to Boatright, using the Funeral Home's Illinois Street address, by certified mail with "return receipt" requested. The "return receipt" was addressed to: "Indiana Professional Licensing Agency, Tracy Hicks, Group 12, 402 W. Washington St., Rm. W072, Indianapolis, Indiana 46204." *State's Ex.* 21. On October 27, 2007, Paula Warner ("Warner"), a funeral director employed by the Funeral Home, received the envelope containing the Order, signed and returned the "return receipt," and placed the envelope on Boatright's desk. At trial, Boatright claimed that he was not made aware of the registered mail until December 7, 2007. *Tr.* at 355.

George Allen Miller, Jr. ("Miller") died on Monday, November 5, 2007, a date after which Boatright's License had been suspended by the Board. Between that date and November 19, 2007, Boatright signed Miller's Certificate of Death ("Death Certificate"). Boatright placed his signature in the box designated "Signature of Funeral Director." *State's Ex.* 25. Also on that certificate, Boatright placed his License number in the spot designated for funeral director's license number. *Id.*

On June 2, 2010, a Grand Jury indictment was filed against Boatright charging one count of Class C felony corrupt business influence, ten counts of Class C felony forgery,

3

and three counts of Class C felony theft. Following a two-day trial, the jury found Boatright guilty of Count II—Class C felony forgery for signing Miller's Death Certificate as "Funeral Director." The jury was unable to reach a verdict on the remaining thirteen counts, and the trial court declared a mistrial as to those counts.

Boatright filed a motion to correct error and asked the trial court to set aside his conviction on Count II on the basis that "there is a specific statute [Indiana Code section 25-15-8-24] which covers the activities that Mr. Boatright engaged in, namely, that he was practicing funerals without a valid license, which is a [C]lass B infraction," and not Class C felony forgery as alleged. *Tr.* at 468. At the sentencing hearing, held on July 22, 2011, the trial court entered judgment of conviction for the Class C felony forgery verdict. Addressing Boatright's motion to correct error, the trial court stated as follows:

> I do think that the essential elements of forgery versus the essential elements of the crime that you suggest is more specific, . . . the evidence to [C]ount [II] was with regard to signing the [D]eath [C]ertificate as if [Boatright] were a licensed funeral director, allegedly knowing that he was not. I know your client has maintained that he did not know that his [L]icense was suspended. He testified to that at trial[,] however, the jury chose to reject that testimony for whatever reason, because I certainly can't see into their mind, but they did reject that and returned a verdict of guilty.

*Tr.* at 471. The trial court then denied Boatright's motion to correct error.

During sentencing, the trial court found aggravating and mitigating circumstances and imposed an aggravated sentence of five years with two years executed and three years suspended. Boatright was ordered to serve two years on home detention, and to be on two years of probation thereafter. He was also ordered to perform eighty hours of community service work and to go through the "Thinking for a Change" program. *Id.* at

4

491. Boatright now appeals.

## DISCUSSION AND DECISION

When reviewing sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the trial court's decision. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. *Id.* We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision. *Id.* at 147.

Forgery is committed when a defendant, with intent to defraud, makes, utters, or possesses a written instrument "in such a manner that it purports to have been made: (1) by another person; (2) at another time; (3) with different provisions; or (4) by authority of one who did not give authority." Ind. Code § 35-43-5-2(b). In Count II, the State alleged that: Boatright "on or between November 5, 2007 and November 19, 2007, did, with intent to defraud, make a written instrument, that is: a Certificate of Death . . . in such a manner that said instrument purported to have been made with different provisions, namely: that Marvin L. Boatright has a valid license number." *Appellant's App.* at 89. Boatright contends that the evidence was insufficient to support his conviction because

5

the State failed to prove (1) that he had actual knowledge that his license was suspended when he signed the Death Certificate, and (2) that he had the intent to defraud.

The State's theory at trial was that intent to defraud could be inferred from the fact that Boatright signed Miller's Death Certificate after his License was suspended. Boatright contends that, while the "return receipt" provided evidence that the Order was delivered to the Illinois Street address, there was no evidence that Boatright saw or opened the Order, or otherwise learned that his License was suspended. Boatright contends that the State presented no evidence that he was informed of the effective date of his License suspension in person or by telephone prior to signing the Death Certificate. "In fact, there was no *direct evidence* at all that [Boatright] was aware of the suspended status of his license on the unknown date he signed the death certificate." *Appellant's Br.* at 7 (emphasis added).

Contrary to Boatright's suggestion, notice need not be proven by direct evidence. "Whether or not actual notice has been given is a question of ultimate fact, provable by any competent evidence." *Miller v. Culver Cmty. Sch. Corp.*, 493 N.E.2d 181, 182 (Ind. Ct. App. 1986). "[T]he evidence may be . . . direct, positive, and overwhelming . . . or it may be entirely indirect and circumstantial." *Id.* at 183 (citation omitted). "Whe[n]ever, from competent evidence, either direct or circumstantial, the court or the jury is entitled to infer . . . that the information was personally communicated to or received by the party, the notice is actual." *Id.* (citation omitted).

Boatright was present at his disciplinary hearing held before the Board on October 4, 2007, during which the Board orally informed him that it was suspending his funeral

director's License indefinitely. The Board also orally informed Boatright that it would render a written ruling and order and that his License would be suspended beginning on the date of the Order. By Boatright's own admission, the State presented circumstantial evidence in the form of testimony from two witnesses: Hicks, the Board's Director, and Warner, a funeral director working at the Funeral Home, who "testified that the [Board's Order was] mailed to [] Boatright" at the Funeral Home's Illinois Street address, "by certified mail and that a receipt card for the letter was signed by Paula Warner and returned to the Board." *Appellant's Br.* at 7. The returned receipt card, which contained a return-address to Hicks at the Professional Licensing Agency, was admitted into evidence. *Id.* Warner testified at trial and acknowledged her signature on the receipt card for the certified letter. *Tr.* at 245. Asked by the prosecutor what she "would have done" with the letter after signing for it, Warner stated that she would have "put it on [Boatright's] desk." *Id.* In finding Boatright guilty of forgery, the jury determined that there was sufficient evidence that he had received actual notice of his License suspension prior to signing the Death Certificate. Boatright's argument is, essentially, a request that we reweigh the evidence, which we cannot do. *Jackson v. State,* 925 N.E.2d 369, 375 (Ind. 2010).

Boatright next contends that the evidence is insufficient to prove that he signed the Death Certificate with the intent to defraud because the State failed to show any benefit to Boatright or any potential injury to any other entity. He contends that in order to possess the requisite intent to defraud there must be the "intent to deceive and thereby work a reliance and an injury." *Appellant's Br.* at 10. Boatright asserts that signing the

7

Death Certificate brought him no benefit because another funeral director at his Funeral Home could have signed it. *Appellant's Br.* at 10. He also maintains that the Board—the body that suspended his license—could not have been fooled into thinking that his License was valid, and therefore there could have been no reliance or injury on the part of the Board. *Id*. at 11.

Boatright bases his argument, in part, on *Eifler v. State*, 570 N.E.2d 70 (Ind. Ct. App. 1991), *trans. denied*, which, in discussing the issue of intent, noted that "[i]ntent to defraud also involves an intent to deceive and thereby work a reliance and injury." *Eifler*, 570 N.E.2d at 77 (citing *Wendling v. State*, 465 N.E.2d 169, 170 (Ind. 1984)). However, as Boatright concedes, the *Eifler* court explained that there must be "a *potential* benefit to the maker or *potential* injury to the defrauded party." *Id.* (emphasis added). "Thus, a definite resulting injury is not required to prove fraudulent intent; the potential for injury is sufficient." *Jacobs v. State*, 640 N.E.2d 61, 65 (Ind. Ct. App. 1994).

While the "intent to deceive and thereby work a reliance and injury" has been cited as an element in a forgery conviction, *Eifler*, 570 N.E.2d at 77, it is not a statutory element of the crime.[3] Here, the trial court gave the jury Preliminary Instruction Number 5B, which provided as follows:

The crime of forgery, as charged in Count II, is defined by law as follows:

A person who, with intent to defraud, makes a written instrument in such a manner that it purports to have been made with different provisions, commits forgery, a Class C felony.

---

[3] It is interesting to note that the *Eifler* language—"an intent to defraud involves an intent to deceive and thereby work a reliance and injury"—was first stated in *Wendling* with a citation to only Black's Law Dictionary.

8

Before you may convict the defendant, the State must have proved each of the following beyond a reasonable doubt:

1. The defendant, Marvin Boatright
2. With intent to defraud
3. Made a written instrument
4. Purporting to have been made with different provisions, namely: that Marvin Boatright has a valid license number.

*Appellant's App.* at 107. The jury also received Final Instructions Number 27 and 28, which provided in pertinent part: (1) "'Make' means to draw, prepare, complete, counterfeit, copy or otherwise reproduce, or alter any written instrument in whole or in part"; and (2) "'Written instrument' means a paper, document, or other instrument containing written matter . . . ." *Id*. at 147. Although the jury was not instructed regarding the specific need to find that Boatright benefited or to find that another was injured by the fraudulent completion of the Death Certificate, Boatright did not object.[4]

The question of a person's criminal intent at the time of the commission of a crime is a question of fact for the jury. *DiTommaso v. State*, 566 N.E.2d 538, 541 (Ind. 1991). "[I]ntent to defraud may be proven by circumstantial evidence." *McHenry v. State,* 820 N.E.2d 124, 127 (Ind. 2005). Because intent is a mental state, the fact-finder often must "resort to the reasonable inferences based upon an examination of the surrounding circumstance to determine" whether, from the person's conduct and the natural consequences therefrom, there is a showing or inference of the requisite criminal intent. *Diallo v. State,* 928 N.E.2d 250, 252–53 (Ind. Ct. App. 2010) (internal citations omitted).

The jury's verdict reflects its understanding that Boatright knew that his License

---

[4] There is no evidence in the record before us that Boatright objected to this instruction. The transcript merely provides, "Court reads preliminary instructions to jury." *Tr*. at 17.

9

was suspended and yet he signed Miller's Death Certificate as if his License was still valid. From the evidence presented at trial, a reasonable jury could have concluded that Boatright had the intent to defraud.

Affirmed.

BARNES, J., and BRADFORD, J., concur.