**Charles BROOKS, Appellant–Defendant,**

v.

**Gregory FRIEDMAN and Dianna Friedman, Appellees–Plaintiffs.**

No. 49A02–0105–CV–333.

Court of Appeals of Indiana.

June 13, 2002.

Marc Lloyd, Indianapolis, IN, Attorney for Appellant.

Kevin D. Shepherd, Indianapolis, IN, Attorney for Appellee.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Charles . Brooks ("Brooks") appeals from a jury verdict against him and in favor of Plaintiff Appellee Gregory Friedman ("Friedman") in a personal injury action.

We reverse and remand.

### ISSUES

We find one issue to be dispositive of this appeal; however, we address Brooks' additional issues because of the likelihood that they will arise again in the event of a retrial of the action.

I. Whether the trial court committed reversible error by refusing to instruct the jury on the doctrine of sudden emergency.

II. Whether the trial court erred by admitting medical records and reports that contained opinions and diagnoses without satisfying Ind. Evidence Rule 702.

III. Whether the trial court erred by allowing Brooks to testify about the extent of·his injuries, medical treatment, and costs of medical treatment.

### FACTS AND PROCEDURAL HISTORY

On Friday, February 27, 1998, at approximately 3:15 p.m., an automobile driven by Brooks rear-ended a vehicle driven by Friedman. The collision occurred on I–70 East just beyond its north split with I–65 North in Indianapolis. At the time of the collision, Friedman was driving back to his office at a computer game company after servicing games at the Indianapolis Airport. Brooks was an electrician at the Indianapolis Airport who had left from work to go to his home on the eastside of Indianapolis.

Friedman filed a complaint for damages against Brooks on March 31, 1999. In his complaint, Friedman alleged that Brooks was negligent in the operation of his vehicle and that Brooks' negligence was the proximate cause of Friedman's damages. Friedman's wife also alleged a loss of consortium.

The jury trial began on February 6, 2001, and concluded the next day. The jury returned a verdict in favor of the Friedmans in the amount of $11,000.00 for Friedman and no award on Mrs. Friedman's loss of consortium claim. The jury found Brooks to be 100% at fault.

Brooks filed a Motion to Correct Errors on March 9, 2001, alleging that the trial

court erred by refusing to give Brooks' sudden emergency instruction, by admitting medical records and reports for Friedman, and by allowing testimony pertaining to Brooks' medical treatment and injuries. The trial court denied the motion on April 24, 2001. This appeal ensued.

Additional facts will be provided where necessary.

## DISCUSSION AND DECISION
### I. SUDDEN EMERGENCY INSTRUCTION

■ Brooks claims that the trial court committed reversible error by failing to give his tendered instruction on sudden emergency.[1] Upon review from a trial court's refusal to give a tendered instruction to the jury, we look for an abuse of the trial court's discretion. *See Barnard v. Himes*, 719 N.E.2d 862, 868 (Ind.Ct. App.1999). In reviewing this issue, we apply a three-part inquiry: 1) whether the tendered instruction is a correct statement of the law; 2) whether there is evidence in the record to support the instruction; and 3) whether the substance of the instruction is covered by other instructions given by the court. *Id.* Friedman concedes that no other instruction covered the substance of the sudden emergency doctrine. Appellant's Br. at 5. After examination of the instructions that were given, we agree. Further, Friedman concedes that, although the tendered instruction did not follow Indiana Pattern Instruction No. 6.19

verbatim, the tendered instruction was "basically a correct statement of the law." *Id.* We agree. Therefore, the central issue in this appeal is whether there is evidence in the record to support the giving of the sudden emergency instruction. If we find that there was evidence in the record to support giving the instruction, we will not reverse the trial court unless the failure to give the instruction substantially and adversely affected Brooks' rights so as to quite likely have affected the result. *See Sullivan v. Fairmont Homes, Inc.*, 543 N.E.2d 1130, 1140 (Ind.App.1989).

■ Our supreme court has held that the sudden emergency doctrine remains viable under the Indiana Comparative Fault Act. *See Compton v. Pletch*, 580 N.E.2d 664 (Ind.1991). Although the sudden emergency doctrine is generally described as an affirmative defense, it does not act to excuse fault, but rather defines the conduct to be expected of a prudent person in an emergency situation. *City of Terre Haute v. Simpson*, 746 N.E.2d 359, 367 (Ind.Ct.App.2001). The doctrine of sudden emergency recognizes that a reasonable person innocently deprived of time to consider his actions does not always exercise the same accuracy of judgment as one who has had the opportunity for reflection. *Barnard*, 719 N.E.2d at 869. The three factual prerequisites to an instruction on sudden emergency are: 1) the actor must not have created or brought

---

1. Brooks' tendered instruction read as follows:

"When a person is confronted with a sudden emergency not of the person's own making without sufficient time to determine with certainty the best course to pursue, that person is not held to the same accuracy of judgment as would be required of him if he had time for deliberation. Accordingly, if the person exercises such care as an ordinarily prudent person would exercise when confronted with a similar emergency, he is not negligent.

In this case, if you find from the evidence that the defendant, Charles Brooks, was confronted with a sudden emergency and that the defendant then pursued a course of action that an ordinarily prudent person would have pursued when confronted with the same or similar emergency, then you may not assess negligence to the defendant." (Appellant's App. 21).

about the emergency through his own negligence; 2) the danger or peril confronting the actor must appear to be so imminent as to leave no time for deliberation; and 3) the actor's apprehension of the peril must itself be reasonable. *Id.* Further, the emergency does not necessarily have to be caused by another person rather than natural forces, such as snow or ice. *Id.*

■ Brooks testified that he was following a red car about two to three car lengths away and that traffic was slowing. Brooks testified that he looked down at his cigarette lighter for two to three seconds and that when he looked back up a light colored car was in front of him at about one car length coming to an abrupt stop. Brooks testified that he stood on the brakes, but collided with Friedman's car nonetheless. Other vehicles behind Brooks' vehicle collided with Brooks' vehicle.

Lindsey Spitzer testified that he was passing through that same area at about the same time on the afternoon of the accident and noticed a white or light colored vehicle in the right lane traveling at a slower rate of speed than the vehicles in the left lane. He noticed that car move to the left lane, and at that point, brake lights on the vehicles in front of him were activated. Traffic in Spitzer's lane came to a complete halt. After some time, Spitzer was able to get into the right lane to proceed around the stopped traffic. When he passed the stopped vehicles, he noticed that cars had been in an accident and he believed that the light or white colored car he saw switch lanes was the front car of the accident.

On the other hand, Friedman testified that he noticed that traffic had slowed in front of him and that at one point he had to slow down quickly. Brooks' vehicle rear-ended Friedman's car shortly after that. Friedman testified that he did not cut-off Brooks' vehicle, and that Friedman did not switch lanes.

When the trial court ruled on the tendered sudden emergency instruction, the trial court stated as follows:

I as I told you, I was doubtful of the sufficiency of the evidence for this particular defense. I just don't see it in the two witnesses that you had, so I am going to refuse that over your objection.

(Tr. 315). The trial court appears to have weighed the evidence presented on the issue of sudden emergency. Therefore, the trial court committed reversible error by resolving a factual issue in the process of determining which instructions to give, rather than allowing the factual issue to be resolved by the jury. The error was reversible, because even though Brooks presented evidence in support his sudden emergency argument, his tendered instruction was denied and he was found to be 100% at fault by the jury.

Friedman focuses much of his argument on the fact that Brooks looked down at his cigarette lighter and that both Friedman and Brooks knew that traffic slowed down on Fridays at that time of the afternoon. Friedman argues that the sudden emergency was of Brooks's own making because he glanced down at his cigarette lighter for two to three seconds. Further, Friedman focuses on the fact that Brooks saw traffic slowing prior to glancing at his cigarette lighter, in order to establish that there was nothing sudden about the situation. However, it is just as arguable that the sudden emergency was created by the lighter-colored vehicle cutting in front of Brooks while he briefly glanced down. While Friedman did present evidence to refute Brooks' sudden emergency argument, Brooks did present evidence to support each of the three prerequisites. Whether or not that evidence was believa-

ble or entitled to much weight was for the jury to decide, not the trial court.

## II. *MEDICAL RECORDS EVIDENCE*

■ Although the foregoing issue is dispositive of this appeal, the issue presented regarding the admissibility of the medical records evidence is likely to present itself upon retrial of the case. Therefore, we address that issue now.

At trial, Friedman testified that he sought medical treatment from Dr. M. Phillips, M.D., of Community Hospital's Emergency Room, and Dr. F. Laux, D.C. for injuries from the accident. During direct examination of Friedman, counsel for Friedman introduced certified medical records from those medical providers and from an admitting doctor and a radiologist. Brooks objected to the admission of those documents based upon Ind. Evidence Rule 803(6). However, the trial court admitted the documents over Brooks' objection. Dr. Laux was the only medical provider to testify at trial.[2]

■ Ind. Evidence Rule 803(6) provides as follows:

**Records of Regularly Conducted Business Activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or method or circumstances

of preparation indicate a lack of trustworthiness. The term "business" as used in this Rule includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The medical reports of Dr. Phillips that were admitted in the case at bar contained opinions, diagnoses, and prognoses. Further, the records contained diagnostic x-ray reports with opinions from the radiologist, and notes from the admitting doctor. While these records are not excluded by the hearsay rule, the records must also be otherwise admissible. *See Schaefer v. State*, 750 N.E.2d 787, 793 (Ind.Ct.App. 2001). Hospital records may not be. excluded as hearsay simply because they include opinions or diagnoses. *Id.* Medical opinions and diagnoses must meet the requirements for expert opinions set forth in Evid. R. 702 in order to be admitted into evidence. *Id.*

Evid. R. 702 provides as follows:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

■ There are two requirements that must be met for a witness to be qualified as an expert. *Id.* First, the subject matter must be distinctly related to some scientific field, business, or profession beyond the

---

**2.** Brooks objected to the admission of the medical records signed by Dr. F. Laux, D.C. during Friedman's direct examination. On appeal, Brooks maintains that the records in-

appropriately were introduced during Friedman's testimony, but does not challenge their admissibility as Dr. Laux later testified at trial.

knowledge of the average person. *Id.* Second, the witness must have sufficient skill, knowledge, or experience in that area so that the opinion will aid the trier of fact. *Id.*

■ Once the foundational requirements have been satisfied, the strengths and weaknesses of the expert's opinion may be questioned against the facts, its conclusiveness or lack thereof may be explored, and any lack of certitude may be fully revealed to the finder of fact. *Id.* at 794. The finder of fact is entitled to weigh and determine the credibility to be accorded the expert's opinion based on the evidence presented, including the extent of the witness's experience and expertise, the reliability of the analytical methods employed, and the degree of certitude with which the opinion is cast. *Id.* In the case at bar, none of the foundational requirements were laid for the expert opinion evidence contained in the medical records.

■ Furthermore, Dr. Laux is a chiropractor who treated Friedman. A chiropractic physician does not have the same education, experience, and training as medical doctors. *Faulkner v. Markkay of Indiana, Inc.*, 663 N.E.2d 798, 801 (Ind.Ct. App.1996). Chiropractors are not qualified to serve as experts in cases involving physicians. *Id.* Therefore, chiropractors can not testify concerning medical doctors' reports. *Id.*

In the event of a retrial in this matter, the medical reports could be admissible, but only after the proper foundational requirements had been met.[3]

3. Friedman argued that Brooks' waived the issue because his argument below was different than his argument on appeal. Brooks' objection was based on hearsay and lack of foundation. Because of our resolution of the

## III. EVIDENCE OF DEFENDANT'S INJURIES

Because of our disposition of the first issue in this appeal regarding the sudden emergency instruction, it is unnecessary for us to address this issue.

## CONCLUSION

The trial court erred by refusing to give Brooks' tendered sudden emergency instruction. The trial court appears to have weighed the evidence. The failure to give the instruction substantially and adversely affected Brooks' rights so as to quite likely have affected the result. In the event of a retrial of this case, the medical records at issue in the case at bar could be admissible if the proper foundational requirements are met.

Reversed and remanded.

SULLIVAN, J., and MATHIAS, J., concur.

first issue, we do not address the waiver argument. We comment on this issue only because of its likelihood to arise again in the event of a retrial.