## FOR PUBLICATION



**FILED**
Jun 04 2014, 10:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**ERIC A. FREY**
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**KURT V. LAKER**
**CRAIG D. DOYLE**
Doyle Legal Corporation, P.C.
Indianapolis, Indiana

**MATTHEW A. SHEEHAN**
Smock & Etling
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE SUPERVISED ESTATE OF MILDRED BORGWALD, Deceased, | ) ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 84A01-1302-ES-80 |
| OLD NATIONAL BANK and RAELYNN POUND, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable John T. Roach, Judge
Cause No. 84D01-1004-ES-3250

**June 4, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Respondent, The Supervised Estate of Mildred Borgwald, Deceased (the Estate), appeals the trial court's decision in favor of Appellees-Claimants, Old National Bank (ONB) and Raelynn Pound (Raelynn), entitling ONB to foreclose the mortgage and equity line of credit against the Estate.[1]

We affirm.

## ISSUES

The Estate raises four issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion when it excluded the testimony of the Estate's proffered expert witness, Dr. Robert Lalouche (Dr. Lalouche), a gynecologist who had never treated Mildred Borgwald (Mildred);

(2) Whether the trial court improperly denied the Estate an opportunity to make an offer of proof with respect to Dr. Lalouche's anticipated testimony;

(3) Whether the trial court abused its discretion when it admitted redacted, certified copies of medical records containing the observations of nurses and physicians regarding Mildred's mental and physical status; and

(4) Whether ONB's mortgage was invalidated by the closing agent's failure to read the loan documents to Mildred in violation of Indiana Code section 33-42-2-2(4).

## FACTS AND PROCEDURAL HISTORY

---

[1] We conducted oral argument in this case on February 27, 2014 at Wabash College, Crawfordsville, Indiana. We would like to thank counsel for their excellent advocacy and the College for its cordial hospitality.

Ninety-five-year-old Mildred passed away on August 29, 2008. On March 21, 2001, Mildred executed her Last Will and Testament, leaving $1,000 to each of her five grandchildren, with the remainder of her estate to her daughter, Lana McGee (Lana). On the same date, Mildred also executed a general durable power of attorney, designating Lana as attorney-in-fact upon a written declaration by Mildred's doctor that she was unable to manage her own affairs. On July 17, 2001, Dr. Lance Pickrell (Dr. Pickrell), Mildred's ophthalmologist, declared that Mildred was "unable to manage her own affairs due to the onset of blindness." (Trial Exh. 3). As such, Dr. Pickrell's declaration activated the power of attorney.

For the next six years, and prior to June 2007, Mildred, despite increasing difficulties with sight and hearing, insisted that she reside on her own in her residence. In the summer of 2007, Mildred had become hard of hearing and had vision problems. Her family accommodated her by speaking louder, interacting closer, and by describing checks to her and showing her where to sign.

In June of 2007, Mildred fell in her home and required hospitalization. After her discharge from the hospital, she returned home and was cared for by the Visiting Nurses Association. In addition, Mildred asked her granddaughter and Lana's daughter, Raelynn, to take care of her in Mildred's home. Between July 2007 and June 2008, Raelynn cared for her grandmother "24/7." (Appellant's App. p. 26). Mildred offered to pay Raelynn $650.00 per week for her services.

On October 23, 2007, Raelynn accompanied Mildred to Old National Bank (ONB) to complete an application of an equity line of credit against her home, which was valued

3

at $55,000. Denise Keegan (Keegan), ONB's customer service representative, observed the close connection between Mildred and Raelynn. Mildred informed Keegan that she wanted to obtain a loan to pay for Raelynn's in-home health care services. During her dealings with Mildred, Keegan was assured that Mildred was cognizant of her surroundings and her actions. At no time did Keegan believe that Raelynn was directing or influencing the transaction.

On October 31, 2007, Mildred closed on an equity line of credit in the amount of $36,000. A first disbursement in the amount of $12,600 was transferred into Mildred and Raelynn's joint checking account that same day. This entire amount was paid out to Raelynn by check on November 7, 2007. Thereafter, a series of checks from November 2007 through June 2008 were written to further deplete the equity line of credit and which were drawn on the joint checking account, "consistent with a weekly wage of $650.00 for healthcare." (Appellant's App. p. 6).

In June of 2008, Mildred became hospitalized. Asserting her authority under the power of attorney, Lana accused Raelynn of theft and undue influence, demanding that Raelynn leave the hospital and move out of Mildred's residence. Mildred passed away on August 29, 2008.

On April 19, 2010, Lana, as personal representative, opened Mildred's estate (Estate). On July 15, 2010, ONB filed a claim for $36,274.54, representing the funds borrowed by Mildred under the equity line of credit. Although the claim was initially disallowed by the Estate and the trial court, the trial court granted ONB's subsequent

4

motion to correct error and relief from judgment. At the same time, the Estate filed a petition seeking to recover assets from Raelynn and asserting fraud and undue influence.

Despite several requests by ONB to the Estate to submit its witness lists and to make its expert witnesses available for discovery, the Estate neglected to do so. Finally, on May 30, 2012, ONB filed a renewed motion to exclude the Estate's expert witnesses, which the trial court conditionally granted on June 14, 2012. On July 6, 2012, the Estate produced the report of its proffered expert witness, Dr. Lalouche. This report disclosed for the first time that Dr. Lalouche was a non-treating gynecologist. Additionally, the Estate noticed a video deposition, which it intended to use at trial and refused to make Dr. Lalouche available for a discovery deposition. On July 13, 2012, the trial court granted a motion to quash the video deposition. Thereafter, on July 18, 2012, the trial court ordered Dr. Lalouche's testimony excluded because (1) the Estate refused to make the doctor available for anything other than a video deposition for trial in contravention of the trial court's prior orders; (b) Dr. Lalouche was engaged to render an opinion about the mental state of a patient he had never met; and (c) the doctor intended to testify solely on the basis of medical records.

On August 26 and October 26, 2012, the trial court conducted a bench trial. On January 25, 2013, the trial court issued its findings of fact and conclusions of law, finding that Mildred had the mental capacity to enter into a contract and was not unduly influenced by Raelynn. The trial court concluded that ONB was the holder and owner of a valid mortgage and was entitled to have the mortgage foreclosed as a valid and paramount lien on Mildred's real property.

The Estate now appeals.[2]  Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Admissibility of Dr. Lalouche's Testimony*

The Estate's first argument centers on the trial court's exclusion of the trial testimony by its proposed expert witness, Dr. Lalouche.  A trial court's determination regarding the admissibility of expert testimony under Evidence Rule 702 is a matter within its broad discretion and will be reversed only for abuse of that discretion.  *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 459 (Ind. 2001).  The trial court's decision is presumed correct, and the party challenging the decision has the burden of persuading us that the trial court abused its discretion.  *TRW Vehicle Safety Systems, Inc. v. Moore*, 936 N.E.2d 201, 216 (Ind. 2010).  It is only those rulings on admissibility made during trial, not those made on motions in limine, that may be raised on appeal.  *Id.*

The admissibility of Dr. Lalouche's testimony was excluded by way of a pre-trial joint motion by ONB and Raelynn to the trial court with a request to reconsider their previous motion to exclude the expert's testimony.  On July 18, 2012, the trial court granted the motion and issued a detailed order, which stated, in pertinent part:

> The estate was ordered to provide opposing counsel, and file with the court, a written report from Dr. Lalouche setting forth his opinions and the basis therefore no later than July 6, 2012.  On July 11, 2012, [ONB] and Raelynn [] filed a motion to reconsider excluding Dr. Lalouche.  The report is the first indication this court has had that Dr. Lalouche is a non-treating ObGyn, who was recently contacted to conduct a records review in order to give an opinion on the competency of the decedent in October 2007 when the mortgage at issue was executed,  There is no history of treatment

---

[2] Although the Estate appealed the trial court's Order in favor of both ONB and Raelynn, the Estate focuses its arguments on appeal solely on ONB; thereby foregoing its claims against Raelynn.

6

between Dr. Lalouche and the decedent. He never treated her, and had never met her.

The Estate was required to make Dr. Lalouche available for deposition no later than August 3, 2012. It refused. Instead, the Estate noticed a videotaped deposition, for presentation at trial, for July 19, 2012. On July 13, 2012, a motion to quash the deposition notice of Dr. Lalouche was filed and granted due to the pending motion to reconsider. The Estate responded to the motion to reconsider on July 17, 2011.

[Mildred] passed away in August 2008. Apparently, she was a patient of Dr. Janiki's. She never treated with Dr. Lalouche and Dr. Lalouche never met her. Dr. Lalouche was asked to review records – which records he was provided is not clear – and render an opinion on decedent's "ability to comprehend a mortgage taken out . . . in October 2007." Dr. Lalouche is a practicing ObGyn. Reviewing and comparing records from 9 months after the mortgage was executed with records from treatment three months prior to the mortgage being executed (plus some historical records, apparently), Dr. Lalouche opines [Mildred] was not competent to execute the mortgage at issue. Dr. Lalouche confined his review to the records he was provided.

[]The opinion testimony of Dr. Lalouche is excluded.

(Appellant's App. pp. 107-08).

At trial, the Estate requested to make an offer of proof with respect to Dr. Lalouche's anticipated testimony. After affirming from the Estate that his testimony would be "consistent with the report [the Estate] submitted, the trial court concluded, "I'm going to consider that your offer of proof, that you would call him and elicit testimony based on the report that was submitted to the court." (Tr. p. 131). Based on the trial court's order and subsequent ruling on the Estate's offer of proof, it is clear that the trial court excluded Dr. Lalouche's testimony based on Ind. Evidence Rule 702 grounds.

7

The trial court is considered the gatekeeper for the admissibility of expert opinion evidence under Rule 702. *Doe v. Shults-Lewis Child & Family Servs., Inc.*, 718 N.E.2d 738, 750 (Ind. 1999). With regard to the admissibility of expert testimony, Rule 702 provides:

> (a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
>
> (b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

By requiring trial courts to be satisfied that expert opinions will assist the fact-finder and that the underlying scientific principles are reliable, Rule 702 guides the admission of expert scientific testimony. *Sears Roebuck & Co.*, 742 N.E.2d at 460. Once the admissibility of the expert's opinion is established under Rule 702, "then the accuracy, consistency, and credibility of the expert's opinions may properly be left to vigorous cross-examination, presentation of contrary evidence, argument of counsel, and resolution by the trier of fact." *Id.* at 461.

Where an expert's testimony is based upon the expert's skill or experience rather than on the application of scientific principles, the proponent of the testimony must only demonstrate that the subject matter is related to some field beyond the knowledge of lay persons and that the witness possesses sufficient skill, knowledge or experience in the field to assist the trier of fact. *Norfolk S. Ry. Co. v. Estate of Wagers*, 833 N.E.2d 93, 102 (Ind. Ct. App. 2005), *trans. denied.*

8

Focusing on Dr. Lalouche's review of Mildred's medical records and his 21 years of experience in "caring for women, many of whom are elderly patients," the Estate contends that "[w]hile it may not have been testimony by a treating physician who saw Mildred the day the mortgage was signed, it was of some benefit at least in explaining the observations, evaluations, notes and records of the nurses who were attending to Mildred at the time, and it was an abuse of discretion for the [c]ourt to absolutely prohibit the Estate from offering an explanation of the medical evidence." (Appellant's Br. pp. 18-19).

In response, ONB and Raelynn rely on *Bennett v. Richmond*, 960 N.E.2d 782 (Ind. 2012), to dispute the Estate's notion that, based on his qualifications and experience, Dr. Lalouche's testimony would be helpful to the trier of fact. In *Bennett*, our supreme court deemed a psychologist qualified to offer an expert opinion that the plaintiff in a personal injury case suffered a traumatic brain injury as a result of a car accident. *Id.* at 789. The court reached this decision based on the fact that the psychologist had personally evaluated the plaintiff, clearly demonstrated his knowledge and experience with traumatic brain injuries, as well as his familiarity with the specific facts of the case. *Id.* Relying on *Bennett's* parameters, ONB and Raelynn assert that having never practiced in a field even tangentially related to neurological diseases or age-related cognitive impairment and never having met Mildred, Dr. Lalouch's experience of caring for elderly patients is of little import to offer an opinion on Mildred's mental capabilities.

Dr. Lalouche is a graduate of UCLA medical school and completed a Duke ObGyn residency. He is a practicing ObGyn physician with 21 years of experience.

9

While it is undisputed by the parties that Dr. Lalouche is a skilled physician, in order to be admissible pursuant to Evidence Rule 702, his testimony must assist the trier of fact in its evaluation of Mildred's mental competency. In this light, we have held before that "[a]n expert in one field of expertise cannot offer opinions in other fields absent a requisite showing of competency in that other field. *Hannan v. Pest Control Servs, Inc*., 734 N.E.2d 674, 679 (Ind. Ct. App. 2000), *trans. denied*.

Reviewing the Estate's offer of proof with respect to Dr. Lalouche's proposed testimony, we note—as did the trial court—that Dr. Lalouche is not Mildred's treating physician; in fact, Dr. Lalouche never met Mildred and formulated his opinion solely based on the records submitted to him by the Estate. In his report, he merely paraphrases the content of these records, without any further clarification of the medical terms or separate elucidation on Mildred's mental capabilities. Thus, although Dr. Lalouche relies in his report on the conclusions by Mildred's treating psychiatrist and internist, he does not profess an independent competency in neurological diseases or age-related mental deficiencies and his conclusion with respect of Mildred's ability to comprehend the mortgage process is of no assistance to the trier of fact. As such, we conclude that the trial court did not abuse its discretion by excluding Dr. Lalouche's proposed expert testimony.[3]

## II. *Offer of Proof*

---

[3] Because we affirm the trial court's exclusion of Dr. Lalouche's proposed testimony based on Indiana Evidence Rule 702, we will not address ONB's and Raelynn's alternative argument with respect to the Estate's discovery violations in releasing Dr. Lalouche's report.

In a single-page argument, the Estate contends that the trial court abused its discretion when it denied the Estate an opportunity to make an offer of proof "by putting Dr. Lalouche on the witness stand and having him testify to the evidence he would have been able to offer had the [c]ourt not excluded his testimony." (Appellant's Br. p. 22). In response, both ONB and Raelynn point out that not only was the Estate allowed to present an offer of proof, the Estate also failed to object when Dr. Lalouche's report was substituted in lieu of his live testimony.

The transcript includes the following colloquy:

[TRIAL COURT]: My understanding is, your position is you want to call [Dr.] Lalouche to testify?
[THE ESTATE]: Just as an offer of proof only.
[TRIAL COURT]: And to do that, you would elicit from him testimony consistent with the report you submitted.
[THE ESTATE]: That's right.
[TRIAL COURT]: Okay, so I'm going to consider that your offer of proof, that you would call him and elicit testimony based on the report that was submitted to the court.
[THE ESTATE]: That's right, Judge.
[TRIAL COURT]: In the prior motions that we had with respect to his testimony.
[THE ESTATE]: That's right, Judge.
[TRIAL COURT]: So I will consider that your offer of proof, however, my ruling stands as it was before, he was not going to be allowed to be a witness or testify for the reasons I gave in my order.
[THE ESTATE]: To that extent, Your Honor, and may it please the court, in rather than having him come here and testify, which I think he is actually available, as part of that offer of proof, would the court allow me just to simply submit the report instead.
[TRIAL COURT]: It's already in the court's file.
[THE ESTATE]: Well, I wasn't sure if that's what we were doing, Judge, I'm just confirming it.
[TRIAL COURT]: Yes, that's what I just did.

(Tr. pp. 131-32).

11

As this exchange clearly establishes, the Estate requested—as required to preserve

the evidentiary ruling—to make an offer of proof with regard to the admissibility of Dr.

Lalouche's testimony even though this issue had been extensively addressed pre-trial.

After confirming the proposed live testimony from Dr. Lalouche would be consistent

with the written report already submitted, the trial court indicated that it would consider

that report to be the Estate's offer of proof and reiterated that it would not allow Dr.

Lalouche to be called as a witness. Contrary to ONB and Raelynn's assertion, the Estate

did not waive this issue by suggesting the report in lieu of live testimony or by failing to

object to the trial court's procedure. The trial court stated twice that it would consider the

report to be the Estate's offer of proof and only then did the Estate offer the report itself

to ensure there was a copy in the court's file. However, because the trial court took the

report as the Estate's offer of proof and because the Estate has not alleged any facts to

which Dr. Lalouche would have testified if questioned live that were not already in the

report, the Estate was not denied the opportunity to make an offer of proof.

### III. *Redacted Medical Records*

During trial, the Estate attempted to introduce certified medical records from the

Visiting Nurses Association through Lana, the personal representative of the Estate and a

lay witness. ONB and Raelynn objected to their admission because no proper foundation

had been laid pursuant to Ind. Evid. Rule 702. Specifically, at trial, Raelynn argued

> The objection would be once again that these are medical records that
> contain observations and opinions as to [Mildred's] medical condition, and
> I think that this case are [sic] rendered by a nurse possibly, or a licensed
> nurse once again, their observations and conclusions that are based on a
> particular skill and expertise and training and those individuals have not

12

been produced nor has there been any witness produced to satisfy the requirements of Indiana Rule [702].

(Tr. p. 55). The trial court ruled:

> Before we broke, [the Estate] had offered Petitioner's Exhibit "4" which were certified medical records involving the Visiting Nurse treatment of decedent, the objection was that although there was a foundation laid for authenticity with the certification the records contained inadmissible opinions and diagnoses. I sustained that objection and asked the parties to see if they could work through the document and redact those parts which were objectionable, the parties have done that . . . .

(Tr. p. 57). The Estate confirmed the trial court's explanation on the record, by agreeing "That's right Judge, we have." (Tr. p. 57).

First, as argued by ONB and Raelynn and we agree, the Estate acquiesced to the redactions and therefore has now waived this issue for appellate review. *See Linton v. Davis*, 887 N.E.2d 960, 968 (Ind. Ct. App. 2008), *trans. denied*. Waiver notwithstanding, however, we will address the Estate's contention on its merits.

In support of their respective arguments, both Appellees rely on *Brooks v. Friedman*, 769 N.E.2d 696,698 (Ind. Ct. App. 2002), where Friedman introduced certified medical records from medical providers during his own testimony. The *Brooks* court stated that "[m]edical opinions and diagnoses must meet the requirements for expert opinions set forth in Evid. R. 702 in order to be admitted into evidence." *Id*. at 701. Paraphrasing Evid. R. 702, the court concluded that the sponsoring witness must first be qualified as an expert and then, once this foundational requirement has been met, the strengths and weaknesses of the expert's opinion may be questioned against the facts. *Id*. at 701-02.

In *Flores v. Gutierrez*, 951 N.E.2d 632 (Ind. Ct. App. 2011), Flores attempted to introduce medical records directly related to his treatment by certain experts whose credentials were never established and who were not available for cross-examination. We affirmed the trial court's exclusion of those records on the basis of Evid. R. 702. Also in *Wilkins v. Swafford*, 811 N.E.2d 374, 388 (Ind. Ct. App. 2004), *abrogated on diff. grounds by Willis v. Westerfield*, 839 N.E.2d 1179 (Ind. 2006), *trans. denied*, a party sought to admit a doctor's medical report through the testimony of his medical partner. The partner did not prepare the report and was not involved in the examination leading to the report. *Id*. at 390. This court affirmed the trial court's exclusion of the report because (1) there was no foundation to show that the doctor who prepared the report was an expert, and (2) there was no opportunity to cross-examine him on his qualifications or the basis for his opinions. *Id*. at 391-92.

Here, the Estate sought to admit Mildred's medical records through the testimony of Lana, the Estate's personal representative. Lana is not a medical professional, but rather a lay witness. Therefore, as Lana could not be qualified as a medical expert pursuant to Evid. R. 702 and establish the foundation of the records, the trial court properly excluded the references to expert opinions and medical diagnoses.

Nevertheless, the Estate now contends that the redaction went too far: "the redaction which was done at the [c]ourt's direction excluded the medications Mildred was on, the nurses' notes concerning her mobility, the nurses' notes regarding Mildred's requirement for assistance in daily activities and much more. These were hardly diagnoses or opinions, but were the kind of day to day nursing records which show the

14

patient's status and her progress or the lack thereof by the patient." (Appellant's Br. p. 20). We disagree.

Redaction is simply the editing or revising of a document. It is commonly used to make otherwise inadmissible exhibits admissible. *Dumes v State*, 718 N.E.2d 1171, 1174 (Ind. Ct. App. 1999). Comparing the redactions in the records to the unredacted documents submitted by the Estate, the agreed upon black-lined sentences reference the medications taken by Mildred and the nurses' observations with respect to Mildred's cognitive and mental limitations. On the other hand, the documents are not redacted with respect to Mildred's level of assistance needed and assistive devices required.

As the nurses' annotations about Mildred's mental and physical well-being are necessarily shaped by the nurses' training and education, the redactions were subject to the requirements of Evid. R. 702. *See Kranda v. Houser-Norborg Med. Corp.*, 419 N.E.2d 1024, 1034 (Ind. Ct. App. 1981) (It should be noted that "[a]n expert witness can draw upon all sources of information coming to his knowledge or through the results of his investigation in order to reach a conclusions."), *reh'g denied*. Therefore, absent an expert witness to establish the foundation of the redactions, we conclude that the trial court properly excluded these parts from the documents.

IV. *Indiana Code section 33-42-2-2(4)*

Lastly, the Estate contends that the mortgage is invalid because ONB failed to follow the directives of Indiana Code section 33-42-2-2(4), which enacts the following:

A notary public may not do any of the following:

\* \* \*

15

(4) Take the acknowledgment of any person who is blind, without first reading the instrument to the blind person.

The Estate presented evidence from Keegan, ONB's customer service representative and loan originator, who testified that she explained the mortgage to Mildred but did not read every single word to her. Keegan testified that Mildred informed her that she would need help because she had trouble seeing and hearing. Speaking clearly and loudly enough for Mildred to hear her, Keegan explained the terms of the documents to Mildred and showed her where to sign. Keegan clarified the finance charges, the interest amount, and the monthly charges. She clarified the processing fees and the late payment fees. At no point during the proceeding did Keegan receive the impression that Mildred failed to understand what was going on. However, Keegan was not the notary for the mortgage; rather, she stated that her "assistant manager, Alice Weir[,]" was the notary that day. (Tr. p. 233). The Estate never called Alice Weir (Weir) as a witness.

In *Outlaw v. Danks*, 832 N.E.2d 1108 (Ind. Ct. App. 2005), *trans. denied*, the appellant challenged the validity of a will which was notarized but not read to a blind testator. The *Outlaw* court upheld the validity of the will and concluded that Indiana law does not require a will to be notarized in order to be valid. *Id.* at 1111. Therefore, as a result, the defective notary "did no more than invalidate [the notary's] signature[.]" *Id.* Likewise, as a will, a mortgage does not need to be notarized in order to be enforceable in Indiana. *See* I.C. § 32-29-1-5.

Here, Weir, the notary, did not testify at trial. Even assuming that the mortgage was not read to Mildred and that Mildred could be characterized as being blind and not

merely "having trouble seeing," the validity of the mortgage would not be affected, only the notary's signature. (Tr. p. 260). Therefore, we decline the Estate's invitation to invalidate the mortgage.

## CONCLUSION

Based on the foregoing, we conclude that (1) the trial court properly excluded the testimony of Dr. Lalouche pursuant to Evid. R. 702; (2) the Estate was not denied the opportunity to make an offer of proof regarding Dr. Lalouche's anticipated testimony; (3) the trial court did not abuse its discretion by admitting redacted, certified copies of medical records; and (4) ONB's mortgage was not invalidated.

Affirmed.

MAY, J. and ROBB, J. concur

17