

FILED

Dec 31 2015, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Benjamen W. Murphy
Law Office of Ben Murphy
Griffith, Indiana

David A. Wilson
Steven J. Alvarez
Walter J. Alvarez
Walter J. Alvarez, P.C.
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Edward W. Hearn
Susan K. Swing
Johnson & Bell, P.C.
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Carl Summerhill,

*Appellant-Plaintiff,*

v.

Craig Klauer,

*Appellee-Defendant*

December 31, 2015

Court of Appeals Case No.
64A03-1503-CT-98

Appeal from the Porter Superior
Court

The Honorable William E. Alexa,
Judge

Trial Court Cause No.
64D02-1209-CT-9714

**Baker, Judge.**

[1] Carl Summerhill sued Craig Klauer for negligence following a collision between Summerhill's moped and Klauer's motorcycle. Following trial, a jury declined to find Klauer liable. Summerhill now appeals that judgment, arguing that the trial court erred in excluding certain evidence and that he was prejudiced as a result. We agree with Summerhill that the trial court erred in excluding the testimony of an accident reconstructionist that Summerhill sought to call on his behalf. Accordingly, we must remand for a new trial. We discuss Summerhill's other arguments to assist the trial court and the parties upon retrial.

## Facts[1]

[2] On the evening of July 18, 2012, Carl Summerhill was riding his moped to his home in Crown Point after meeting with some friends in Valparaiso. As Summerhill headed south down route 2, it looked as though a heavy rainstorm was about to begin. Summerhill saw a building to his left and decided to turn into the parking lot and take shelter under the building's overhang.

[3] Craig Klauer and two of his friends, Ryan Patrick and Parry Brown, had been following behind Summerhill on their motorcycles. Patrick was traveling faster than Summerhill and passed Summerhill on the left side. Klauer followed behind Patrick and attempted to pass Summerhill in the same manner. While Klauer was passing Summerhill, Summerhill attempted to turn left. The rear

---

[1] We held oral argument in this case on November 5, 2015, in Indianapolis. We would like to thank counsel for both parties for their exceptional oral advocacy.

left side of Summerhill's moped collided with the front right side of Klauer's motorcycle. The collision sent Summerhill off the road and into the parking lot where he ended up on the ground.

[4] Officer LaMotte arrived at the scene and spoke with Klauer while paramedics attended to Summerhill. Officer LaMotte then filled out a crash report. As to the "Primary Cause" of the accident, Officer LaMotte checked a box labelled "Improper Turning." Defendant's Ex. 1. Summerhill had fractured his hip as a result of the accident and had to be taken to the hospital. Officer LaMotte later went to the hospital to speak with Summerhill. Summerhill had plates and screws placed on his hip as a result of his injuries and needed to use a walker and crutches for several months. He amassed over $80,000 in medical bills.

[5] On September 21, 2012, Summerhill filed a complaint in the trial court alleging, among other things, that Klauer had failed to maintain reasonable care and control in the operation of his motorcycle, had followed too closely, and had driven at an unsafe speed under the conditions. Klauer filed an answer denying the allegations.

[6] Summerhill planned to call upon Timothy Spencer, an experienced police officer and accredited accident reconstructionist, to testify at trial. After visiting the scene of the accident, speaking to Summerhill, and reviewing photographs of the damage to the vehicles involved, Spencer wrote up a report detailing his opinion as to the cause of the accident. In this report, Spencer criticized Officer LaMotte's crash report as follows:

Officer Lamotte's crash report indicates that Mr. Summerhill was attempting a left turn at the time of the crash. The statements of both drivers ostensibly corroborate this, as they are written in the crash report. At this point, however, the statements of the two drivers begin to differ. Mr. Summerhill is listed in the crash report as having indicated that he was traveling in the "middle of the lane, signaled to turn left" when he began his turn into the warehouse complex. Mr. Klauer is listed as having made the claim that Mr. Summerhill was "driving on the fog line and made a sudden left turn."

The Indiana Officer's Standard Crash Report lists the primary cause of this crash as "Improper Turning" and attributes this as a Driver Contributing Circumstance to Mr. Summerhill. So, in common terms, the Officer listed Mr. Summerhill as being at fault for "Improper Turning."

In my opinion, listing Mr. Summerhill as being at fault in this crash was done in error.

***

[T]he implication seems to be that if a left turn was made from the right side of a travel lane, that turn would be "improper." Title 9 does not support this. It would seem more appropriate to list "Improper Passing" and/or "Following Too Closely" as primary cause/causes and attribute these to Mr. Klauer.

Appellant's App. p. 47-49. Spencer had also produced an animation of the crash, which Summerhill planned to present as well.

[7] On April 14, 2014, Klauer filed a motion to exclude Spencer from testifying at trial. Klauer argued that Spencer's testimony was inadmissible under Indiana

Evidence Rule 702 because his opinions were not based on scientifically sound analysis. On July 17, 2014, the trial court granted Klauer's motion, reasoning as follows:

> [T]he record indicates that Mr. Spencer merely took Plaintiff's testimony, observations from a short amount of time at the approximate location of the accident, and a couple of photographs of one of the vehicles into account when reaching his opinion that, not only is Defendant at fault for the accident, but also what exactly occurred between the two parties leading up to the crash, in order to create his animation. Mr. Spencer has not explained in his expert report how he can be so sure that Defendant was at a certain position in his lane, how fast the parties were going, how closely one party was to the other, etc.— all of these being issues that Mr. Spencer cites as factors leading to the cause of the crash. There is a significant gap between the inputs used by Mr. Spencer and the opinion he reached as evidenced in his expert report and animation video. Therefore, Mr. Spencer has not exhibited the reliability of his expert opinion evidenced in both his Expert Report and animation.

*Id.* at 66. Accordingly, the trial court determined that Spencer's testimony and animation were inadmissible under Indiana Evidence Rule 702.

[8] A jury trial commenced on March 2, 2015. The testimony of several witnesses to the accident differed significantly. Summerhill testified that he was in the center of the lane and had his left turn signal on before he attempted his turn. Another witness, Lindsay Sopcich, who claimed to have been following behind Summerhill in her car when she witnessed the accident, largely corroborated Summerhill's version of events. On the other hand, Klauer testified that Summerhill was on the right side of the lane and had his right turn signal on

before he attempted to turn left. Klauer also called Sopcich's testimony into question, claiming that there was no car between him and Summerhill when he attempted his pass. Patrick and Brown both testified, largely corroborating Klauer's version of events.

[9] During trial, Officer LaMotte's crash report was entered into evidence without objection. Tr. p. 362. Klauer also presented the testimony of Steven Neese, an accident reconstructionist. Neese used the testimony of different witnesses, as well as pictures of damage to the vehicles, to produce diagrams and animations showing how the accident could have happened. The diagrams and animations differed according to whose testimony Neese had used to produce them. All animations showed Klauer attempting to pass Summerhill, Summerhill turning left, and Klauer hitting the rear left side of Summerhill's moped. They differed only as to Klauer and Summerhill's initial positioning within the lane. Summerhill did not object to the introduction of Neese's testimony. *Id.* at 394.

[10] Klauer also called upon Officer LaMotte to testify at trial. During his testimony, the parties held a sidebar with the trial court regarding whether Officer LaMotte should be allowed to testify as to his opinion regarding the cause of the accident. *Id.* at 369-79. Summerhill objected, arguing that Officer LaMotte was not an accident reconstructionist and any opinion he gave would not be based upon scientifically sound principles. The trial court sustained Summerhill's objection and Officer LaMotte was not allowed to testify as to what he believed the cause of the accident to be. *Id.* at 379.

[11] The trial court made three more evidentiary rulings that were adverse to Summerhill. First, in an attempt to impeach Klauer's credibility, Summerhill sought to introduce evidence that Klauer had been convicted of check deception in 1993. The trial court ruled that this evidence was inadmissible under Indiana Evidence Rule 609, as Klauer's conviction was well over ten years old. Summerhill also sought to introduce the testimony of Dr. Erika Mitchell that, because Summerhill had fractured his hip, "[h]e is more likely to have post traumatic arthritis of that hip than someone who has never had a fracture of the hip socket." Appellant's Br. p. 20. The trial court determined that this evidence was speculative and, therefore, inadmissible.

[12] Finally, Summerhill sought to introduce evidence that Sopcich called the police to report the accident the following morning. Summerhill believed evidence was necessary to rebut Klauer's implicit assertion that Sopcich had not witnessed the accident. The trial court ruled that such evidence was inadmissible because it did not believe rebuttal was necessary. Tr. p. 517-18.

[13] On March 5, 2015, the jury returned a verdict in favor of Klauer. Summerhill now appeals.

## Discussion and Decision

## I. Exclusion of Spencer's Testimony

[14] Summerhill first argues that the trial court erred in granting Klauer's motion to exclude Spencer's testimony. Evidentiary rulings, including a decision to exclude expert testimony, lie solely within the discretion of the trial court and

will be reversed only for an abuse of discretion. *Estate of Borgwald v. Old Nat'l Bank*, 12 N.E.3d 252, 256 (Ind. Ct. App. 2014).

[15] Indiana Evidence Rule 702 governs the admissibility of testimony by expert witnesses. It provides that:

> (a) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand or to determine a fact in issue.
>
> (b) Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles.

Evid. R. 702. The trial court acts as a gatekeeper when determining the admissibility of opinion evidence under Rule 702. *Estate of Borgwald*, 12 N.E.3d at 257.

[16] An expert witness must meet two requirements to testify:

> First, the subject matter must be distinctly related to some scientific field, business, or profession beyond the knowledge of the average person. Second, the witness must have sufficient skill, knowledge, or experience in that area so that the opinion will aid the trier of fact.

*Turner v. State*, 720 N.E.2d 440, 444 (Ind. Ct. App. 1999). "Once the admissibility of the expert's opinion is established under Rule 702, 'then the accuracy, consistency, and credibility of the expert's opinions may properly be

left to vigorous cross-examination, presentation of contrary evidence, argument of counsel, and resolution by the trier of fact.'" *Estate of Borgwald*, 12 N.E.3d at 257 (quoting *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 460 (Ind. 2001)).

[17] Accident reconstruction has been defined as "[t]he science of examining all evidence, including physical evidence, that exists as a result of an accident and analyzing it in line with established principles of mathematics and physics in order to re-create or otherwise reenact the event." Black's Law Dictionary (10th ed. 2014). To reconstruct the accident in this case, Spencer, as well as Neese, relied upon photographs and observations of damage to the vehicles as well as the statements of parties and witnesses. Klauer has never maintained that Spencer was not qualified and he does not take issue with the type of evidence Spencer relied upon in reaching his conclusion—nor could he, as it is exactly the same evidence relied upon by Neese. *See* Tr. p. 417-18.

[18] Rather, Klauer takes issue with the *scope* of the evidence Spencer relied upon and the fact that he used it to draw any conclusion at all. He distinguishes what he believes to be Spencer's inadmissible testimony from Neese's admissible testimony by pointing out that Neese reconstructed several different scenarios, which varied depending on whose testimony was considered, and that Neese did not form an opinion as to who was at fault. Spencer, on the other hand, did not take into account other witnesses' versions of events. Instead, he relied

upon conversations he had with Summerhill[2] and Sopcich's deposition testimony, which corroborated Summerhill's version, and looked at physical evidence to reach the conclusion that Klauer was likely at fault.

[19] It was Spencer's failure to take into account more evidence than he did that, in the opinion of both Klauer and the trial court, resulted in a "gap between the inputs" he used "and the opinion he reached" and rendered his testimony inadmissible. Appellant's App. p. 66. In reaching this conclusion, the trial court relied on this Court's decision in *Lytle v. Ford Motor Company*, a case focused on expert testimony regarding possible seatbelt malfunction. 814 N.E.2d 301 (Ind. Ct. App. 2004). We believe the trial court erred in applying *Lytle's* reasoning to the facts of this case.

[20] *Lytle* involved an automobile accident in which a passenger was thrown from a vehicle. *Id.* at 304. The plaintiff sought to introduce expert testimony that the passenger seatbelt may have inadvertently unlatched during the crash. *Id.* at 310-15. The trial court determined that such testimony was inadmissible and granted summary judgment in favor of Ford. *Id.* at 307.

[21] This Court affirmed on appeal, noting that there was a significant gap between the data used by the expert and the conclusion he reached. *Id.* at 313. We held

---

[2] Klauer appears to attach some importance to the fact that Spencer relied upon Summerhill's out-of-court statements in reaching his conclusion. However, we fail to see the significance of this point, as Indiana Evidence Rule 703 provides that "[e]xperts may testify to opinions based on inadmissible evidence," and, in any event, Summerhill later testified to his version of events before the jury at trial.

that "proof of 'inadvertent unlatch' should require a specific scientific analysis" and that such analysis was lacking. *Id.* at 311. We noted that the expert had "simply twisted and pushed two seatbelts together without any evidence that the accident could have resulted in the same forces, direction, duration, rotations, or load conditions as his manipulations." *Id.* Accordingly, we concluded that Lytle's "purported expert testimony failed to comply with Indiana Evidence Rule 702(b), inasmuch as Lytle failed to show that his opinions were based upon reliable scientific principles." *Id.* at 312.

[22] We also distinguished the situation in *Lytle* from other cases in which expert witnesses "simply assisted the trier of fact based on [their] greater skill, knowledge or experience, to evaluate physical evidence that was already before the trial court." *Id.* (discussing *Malinski v. State*, 794 N.E.2d 1071 (Ind. 2003); *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705 (Ind. Ct. App. 2004)). We noted that, unlike these other cases, there was "no way for a jury to determine whether what Lytle says happened in the vehicle during the accident sequence *actually* occurred." *Id.* (emphasis original).

[23] In contrast to *Lytle*, the principles of accident reconstruction employed by Spencer certainly meet Rule 702(b)'s reliability requirement. We reiterate that Klauer would have a hard time arguing otherwise, as his expert based his testimony on the very same principles. These principles have been described, and understood, by countless juries and are easily comprehended by people of ordinary intelligence. *Lytle* is therefore a far cry from the present case in this regard.

[24] Furthermore, *Lytle* involved the admissibility of expert testimony as to a hypothetical scenario when there was no evidence as to whether that scenario actually described the facts of the particular case. This is in contrast to this case, where there seems to be no dispute over what the physical evidence indicates, and while the causative scenarios differ depending on whose testimony is considered, each scenario is nevertheless plausible and supported by some evidence. Furthermore, all of the evidence relied upon by both experts in this case was also before the jury. Thus, the jury was not being asked, as it would have been in *Lytle*, to simply guess whether a scenario proposed by an expert coincided with reality. Rather, it could look to the same evidence that the expert had and choose for itself the weight to assign to the expert's opinion.

[25] Nor do we believe that Spencer should have been precluded from testifying because he gave his opinion as to the cause of the accident. While Klauer's negligence is ultimately a question for the jury, we have previously held expert opinion testimony admissible "even on the ultimate issue of the case, so long as the testimony concerns matters which are not within the common knowledge and experience of ordinary persons and the testimony will aid the jury." *Koziol v. Vojvoda*, 662 N.E.2d 985, 991 (Ind. Ct. App. 1996).

[26] For instance, among the statutes relevant to the jury's determination in this case is Indiana Code section 9-21-8-5, which deals with overtaking and passing on the roadways. It provides:

> A person who drives a vehicle overtaking another vehicle
> proceeding in the same direction shall pass to the left of the other

vehicle *at a safe distance* and may not again drive to the right side of the roadway until safely clear of the overtaken vehicle.

I.C. § 9-21-8-5 (emphasis added). While the question of whether Klauer attempted his pass at a safe distance is one for the jury, prior decisions of this Court make clear that qualified experts may give their opinion on such issues under certain circumstances.

[27] This Court has previously allowed an investigating police officer to give his opinion as to the cause of an accident where "the jury knew the factual basis for his opinion," which was "based on his experience and training" and "was of some use to the jury." *State v. Bouras*, 423 N.E.2d 741, 746 (Ind. Ct. App. 1981). Similarly, in *Dorsett v. R.L. Carter, Inc.*, we held that an accident reconstructionist could testify as to who was at fault in an accident even though he was unable to adequately explain his reasoning. 702 N.E.2d 1126, 1128 (Ind. Ct. App. 1998). We noted that "[t]he lack of facts and reasoning, which may be brought out on cross-examination of the expert, goes to the weight to be given to the expert's opinion, not its admissibility." *Id.* The situation we are presented with here is simply not distinguishable.

[28] In sum, contrary to Klauer's assertion, Rule 702 does not dictate that an expert's opinion must be excluded in any case where there is evidence in the record that tends to contradict that opinion. Opposing parties can be expected to present conflicting expert testimony when advocating their respective positions and Rule 702 contains no general even-handedness requirement. Accident reconstruction commonly relies on witness statements and Klauer was

free to make the jury aware of this and probe the accuracy of Spencer's conclusions insofar as they relied on those statements on cross-examination.[3] Furthermore, all of the evidence Spencer relied on in reaching his conclusions was before the jury. As *Lytle* presented the exact opposite set of circumstances in this regard, its holding is not applicable here. Simply put, Spencer was qualified to reconstruct the accident and give his opinion as to its cause, his opinion would have been helpful to the jury, and the exclusion of his testimony undoubtedly prejudiced Summerhill's case.[4]

## II. Issues Upon Retrial

[29] We next discuss several other evidentiary rulings that Summerhill believes were made in error to assist the trial court should these issues arise on retrial.

## A. Exclusion of Klauer's Prior Convictions

[30] Summerhill contends that the trial court erred in preventing him from introducing evidence that Klauer had been convicted of check deception and theft by check in 1993. Indiana Evidence Rule 609, which governs the admissibility of evidence of prior convictions, provides:

> (a) **General Rule.** For purposes of attacking the credibility of a witness, evidence that the witness has been convicted of

---

[3] Klauer could accomplish this in much the same way Summerhill did during his cross-examination of Neese. Summerhill was able to show the jury that Neese's diagrams were dependent on certain testimony and would differ depending upon whose testimony was considered. Tr. p. 468-70.

[4] This is especially true in light of the fact that Klauer was able to admit into evidence a police report, written by an officer not trained in accident reconstruction, which listed Summerhill as being at fault for the accident.

a crime or an attempt of a crime must be admitted but only if the crime committed or attempted is (1) murder, treason, rape, robbery, kidnapping, burglary, arson, or criminal confinement; or (2) a crime involving dishonesty or false statement, including perjury.

(b) **Limit of Using Evidence After 10 Years.** The subdivision (b) applies if more than ten (10) years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:

(1) its probative value, supported by specific facts and circumstances substantially outweighs its prejudicial effect; and

(2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

[31] Summerhill acknowledges that Klauer's convictions are well over twenty years old and are therefore subject to analysis under Rule 609(b). We have previously observed that Rule 609(b) is biased against admissibility. *Dowdy v. State*, 672 N.E.2d 948, 951 (Ind. Ct. App. 1996). However, this presumption may be overcome if the party seeking to introduce evidence of the aged conviction can show that its probative value substantially outweighs its prejudicial effect. *Id.*

[32] In weighing the probative value of a conviction against the unfair prejudice to a witness, the trial court may consider a range of factors: including

(1) the impeachment value of the prior crimes; (2) the point in time of the convictions and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the witness' testimony; and (5) the centrality of the credibility issue.

*Saunders v. State*, 848 N.E.2d 1117, 1123 (Ind. Ct. App. 2006). This list is not exhaustive and other factors may be considered as well. 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE § 609.202 (3d ed. 2007).

[33] As the party seeking to admit the convictions, Summerhill "must support the argument for probative value with specific facts and circumstances upon which the trial court may base a finding of admissibility." *Id.* He makes three main points in support of admissibility. First, he argues that the convictions are highly probative because they were for crimes of dishonesty, which reflects poorly on Klauer's character for truthfulness. Second, he argues that witness credibility is central to this case as the witnesses present conflicting versions of events.

[34] Third, and most importantly, he argues that the convictions are highly probative because Klauer was initially dishonest when asked about them during discovery. Prior to trial, Klauer answered an interrogatory indicating that he had no prior convictions involving fraud or dishonesty. This, of course, was untrue. Summerhill believes that this reflects poorly on Klauer's credibility and that he should be able to introduce evidence of Klauer's convictions as a foundation for demonstrating that Klauer gave false answers to interrogatories.

[35] We find this argument very persuasive. Regardless of whether the fact of Klauer's pretrial dishonesty relates to any of the above-mentioned factors—we reiterate that the list is not exhaustive—we find such dishonesty highly pertinent to the Rule 609(b) analysis. Evidence that a witness lied under oath during the same proceedings in which he is now testifying is extremely relevant to that witness's character for truthfulness. This fact dramatically increases the probative value of the prior convictions and tips the scales heavily towards admissibility. In fact, the Seventh Circuit has previously found no error in a trial court's decision to admit a conviction over ten years old for this very reason. *Stutzman v. CRST, Inc.*, 997 F.2d 291, 298-99 (7th Cir. 1993) (witness lied about prior convictions under oath during deposition; no error in admitting aged conviction when "the recent false statement under oath was quite probative" and "it could not be discussed without mentioning the underlying conviction").

[36] Thus, if the trial court finds that Klauer was dishonest, this factor would strongly favor admitting his convictions. Yet it still must be weighed alongside other factors, such as the five listed above and any others the trial court deems relevant. As this case now stands, there is no need to find that the trial court abused its discretion in excluding these convictions from evidence. The record does not make clear precisely what was argued before the trial court on this issue nor does it give us any insight into the reasons that lay behind the trial court's decision. Tr. p. 257-59. As we have ordered a new trial in this case, the trial court will have an opportunity to rule on this issue once more and weigh

the admissibility of Klauer's convictions, keeping in mind the points we have just discussed.

## B. Exclusion of Expert Medical Testimony

[37]    Summerhill next argues that the trial court erred in excluding the testimony of Dr. Erika Mitchell, who would have testified as to Summerhill's likelihood of developing post-traumatic arthritis. At trial, Summerhill sought to play Dr. Mitchell's videotaped deposition for the jury, in which she testified to her opinion that Summerhill was more likely than a person who had not suffered a hip fracture to have post-traumatic arthritis in the future. Court's Ex. 4 p. 51-53. The trial court found this testimony too speculative for the jury to hear.

[38]    We believe that the trial court erred in excluding this testimony. Evidence does not have to be conclusive to be admissible. *Turner v. State*, 953 N.E.2d 1039, 1050 (Ind. 2011). "The weakness of the connection of [the evidence] to the defendant goes toward its weight and not its admissibility." *Id.* While "a trial court does not necessarily abuse its discretion when it requires an expert to provide 'some degree of certainty' to support the expert's opinion," "absolute certainty is not required" for medical testimony to be admissible. *Strong v. State*, 528 N.E.2d 924, 930 (Ind. 1989) (quoting *Heald v. State*, 492 N.E.2d 671, 679 (Ind. 1986)).

[39]    Klauer argues that because Dr. Mitchell "did not provide any testimony as to what degree Summerhill's chances of developing post-traumatic arthritis had increased," her testimony was mere speculation and was "not stated with *any*

degree of certainty." Appellee's Br. p. 20 (emphasis original). However, Klauer fails to point us to any authority standing for the proposition that a medical expert needs to specify a degree or percentage regarding the likelihood that future symptoms will develop for such testimony to be admissible. Here, Dr. Mitchell simply sought to testify as follows:

> What I would say is [Summerhill] is more likely than a person who has not had an acetabulum fracture to suffer from arthritis of that hip.
>
> ***
>
> I can only say more likely than a patient who has not had an acetabulum fracture.
>
> ***
>
> There are several studies that actually show that outcomes in patients with significant acetabulum fractures have an increased risk of post traumatic arthritis. I based my opinion on that.

Court's Ex. 4 at 51-53.

[40] While expert opinion may be excluded as speculative when it is found to be without factual basis, that cannot be said of this testimony. *See Clark v. Sporre*, 777 N.E.2d 1166, 1171 (Ind. Ct. App. 2002). Dr. Mitchell based her opinion on the nature of Summerhill's injuries and medical studies on the subject. Klauer does not challenge the validity of Dr. Mitchell's methodology, the studies upon which she relied, or her qualifications as an expert. Accordingly, we conclude

that the trial court erred in excluding portions of Dr. Mitchell's testimony, as questions of the remoteness and the likelihood of future symptoms go to the weight that the jury will assign to such evidence and not to its admissibility.

## C. Evidence that Sopcich Called the Police

Finally, Summerhill argues that the trial court erred in not allowing him to introduce evidence that Lindsay Sopcich, who purportedly witnessed the accident, had called the police to report the accident the following morning. Summerhill claims that Klauer had called into question whether Sopcich had actually witnessed the accident. Summerhill points to Klauer's opening statement, where Klauer asserted that Sopcich was confused as to a number of things regarding the accident as well as to the testimony of Klauer, Patrick, Brown, and Officer LaMotte, none of whom recalled seeing Sopcich at the scene. Summerhill also points out that the jury questioned whether Sopcich was at the scene, asking Officer LaMotte if there was a record of Sopcich calling the police department. Court's Ex. 9. When the trial court asked Officer LaMotte this question, Officer LaMotte responded that he did not know. Tr. p. 390.

Summerhill had a call log indicating that Sopcich had called the station the following morning. The call log could have been admitted under Indiana Evidence Rule 803(6) had it been authenticated. Summerhill tried to introduce the call log during Officer LaMotte's testimony, but the trial court did not permit this line of questioning as Officer LaMotte had not seen the call log

before. Summerhill then attempted to call C.J. Witmer, the director of the Porter County 911 call center, to authenticate the call log and testify that it indicated that Sopcich had called. Klauer objected because Witmer had not previously been listed as a witness. The trial court did not allow Witmer to testify in rebuttal because it did not believe there was anything to rebut.

[43] We need not consider whether this evidence should have been admitted as we cannot see how Summerhill was harmed by its exclusion. Even had Summerhill proved that Sopcich called the police the day after the accident, this fact does not tend to prove that she was there to witness the accident the day before. As such, any error that may have been committed was harmless. However, if Summerhill believes this evidence is necessary, he is free to lay a proper foundation and introduce it upon retrial.

[44] The judgment of the trial court is reversed and the cause is remanded for a new trial.

Bailey, J., and Mathias, J., concur.