Tony ARMOUR, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0107–CR–485.

Court of Appeals of Indiana.

Feb. 5, 2002.

---

Hilary Bowe Ricks, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Tony Armour ("Armour") was convicted of possession of cocaine,[1] as a Class C felony, in Marion Superior Court. The trial court also determined that he was an habitual offender. He was sentenced to serve eight years, and that sentence was enhanced by eight years because of his habitual offender status. He appeals raising two issues, which we restate as:

I. Whether the trial court abused its discretion when it denied Armour's motion to suppress; and,

II. Whether there was sufficient evidence to support Armour's conviction for possession of cocaine, as a Class C felony.

We affirm.

### Facts and Procedural History

On February 20, 2000, off duty Indianapolis Police Department Officer Douglas Arnold ("Officer Arnold") was working as a security employee for Motel 6 in Beech Grove, Indiana. Sometime that day, Officer Arnold learned that Room 139 was registered to Melanie Stover, and that there was an outstanding Marion County warrant for the arrest of a Melanie Stover

---

1. Ind.Code § 35–48–4–6 (1998)

on a charge of check deception. Before he attempted to serve the warrant, Officer Arnold requested backup from the Beech Grove Police Department. Two uniformed officers arrived to assist in serving the warrant, and Officer Arnold and the officers proceeded to Room 139 to ascertain if the individual in that room was the individual identified in the arrest warrant.

As they approached the doorway to the room and before they could knock, the door was opened by Armour. Through the open doorway, Officer Arnold observed that there were three individuals in the room, two males, including Armour, and a female. Officer Arnold identified himself and stated that they were looking for Melanie Stover. Armour replied that Stover was not in the room; however, because the female matched the basic description of Stover in the arrest warrant, Officer Arnold asked all three individuals in the room for identification. Armour and the female replied that they did not have any identification. The female told Officer Arnold that her name was Jennifer Hill, and Armour stated that his name was Tony Savage. Later, Armour told Officer Arnold his name is actually Tony Armour, but he goes by the name of Tony Savage.

Officer Arnold testified at trial that while he was in the process of attempting to obtain identification from the individuals in the room, he saw a crack pipe lying on the bed in plain view. He also observed an open black shaving bag on the floor with two test tubes sticking out of it. The test tubes appeared to be wet and had a white or yellow residue clinging to the sides. Additionally, two glasses, rubbing alcohol and a white or yellow residue were on the table next to the bed. There were plastic bags on the table, and one of the bags appeared to contain marijuana.

Based on Officer Arnold's observation of the crack pipe, test tubes, alcohol and residue, Armour and the other occupants of the room were arrested for possession of cocaine and drug paraphernalia. During the search of Armour incident to his arrest, an officer discovered 2.9052 grams of cocaine, money, and baking soda inside his coat pocket. A total of 6.1125 grams of cocaine was found inside the hotel room.

The State charged Armour with possession of cocaine, as a Class C felony, due to the fact that the total amount of cocaine found in the room exceeded three grams, and with being an habitual offender. Prior to trial, Armour moved to suppress all "physical evidence discovered directly or indirectly as a result of the illegal search" of the hotel room and Armour's subsequent arrest. Appellant's App. p. 31. In denying the motion, the trial court determined that Armour had not established a reasonable expectation of privacy in the hotel room, and that Officer Arnold's observation of the crack pipe was made from a place where he had a right to be. *Id.* at 65. Armour's subsequent motion to reconsider was also denied.

A bench trial was held on April 16, 2001. At trial, the trial court admitted the physical evidence Officer Arnold collected from the hotel room over Armour's renewed objection. The trial court found Armour guilty of possession of cocaine, as a Class C felony. Armour then admitted to being an habitual offender. Armour was sentenced to eight years, and that sentence was enhanced by eight years due to the habitual offender determination, for a total sentence of sixteen years. Armour appeals.

## I. Motion to Suppress

Armour argues that the trial court abused its discretion when it denied his motion to suppress. Armour first argues that the issue of standing has been waived by the State; next, that he had a reasonable expectation of privacy in the hotel

room; and finally, that even if he did not have a reasonable expectation of privacy, Officer Arnold performed an illegal search of the hotel room, which led to his illegal arrest.

■ The admissibility of evidence is within the sound discretion of the trial court and will not be disturbed absent a showing that the trial court abused its discretion. *Johnson v. State,* 710 N.E.2d 925, 927 (Ind.Ct.App.1999). Our review of a denial of a motion to suppress is similar to our review of other sufficiency matters. *Goodner v. State,* 714 N.E.2d 638, 641 (Ind.1999). The trial court's decision must be supported by substantial evidence of probative value. *Id.* We will not reweigh the evidence, and any conflicting evidence is considered in a light most favorable to the trial court's decision. *Id.*

### A. Expectation of Privacy.

■ "Federal Fourth Amendment law protects citizens, ... from warrantless searches of places or items in which the individual has an actual, subjective expectation of privacy which society recognizes as reasonable." *Trowbridge v. State,* 717 N.E.2d 138, 143 (Ind.1999) (citing *United States v. Doe,* 801 F.Supp. 1562, 1572 (E.D.Tex.1992)). The State argues that Armour did not have an expectation of privacy in the hotel room. Armour contends that the State has waived this argument because it was not raised by the State in the trial court.

■ A defendant bears the burden of demonstrating a legitimate expectation of privacy in the premises searched. *Brown v. State,* 691 N.E.2d 438, 443 (Ind.1998). However, "[w]here the prosecution has failed to make any trial court challenge to standing, the government may not raise the issue for the first time on appeal." *Everroad v. State,* 590 N.E.2d 567, 569 (Ind.1992) (citations omitted); *see also*

*Tumblin v. State,* 736 N.E.2d 317, 320–21 (Ind.Ct.App.2000); *State v. Friedel,* 714 N.E.2d 1231, 1236 (Ind.Ct.App.1999).

■ In this case, while the State did not raise the issue of standing, the trial court did so *sua sponte* when it denied Armour's motion to suppress. In its order denying the motion to suppress, the trial court stated that Armour did not have standing because he did not establish a reasonable expectation of privacy in the hotel room. Armour then filed a motion to reconsider that ruling, and in that motion Armour argued that he did have a legitimate expectation of privacy in the hotel room. The trial court heard oral argument on this motion. Therefore, although the State did not raise the issue of standing, the issue was litigated in the trial court, and the considerations of fundamental unfairness that were raised and applied in *Everroad* and the other cases cited above do not apply here. Because the issue of standing was fully litigated at trial, we find that the State has not waived this argument for the purposes of this appeal.

■ Next, Armour argues that he had a legitimate expectation of privacy in the hotel room. When we review whether an expectation of privacy exists under a Fourth Amendment analysis, we look to whether the defendant has control over or ownership of the premises searched. *Friedel,* 714 N.E.2d at 1236. A person's hotel room is a "home" for Fourth Amendment purposes. *Culpepper v. State,* 662 N.E.2d 670, 675 (Ind.Ct.App.1996), *trans. denied,* (citing *Ceroni v. State,* 559 N.E.2d 372, 373 (Ind.Ct.App.1990), *trans. denied* ). Also, where the registered guest of the hotel room consents to access and use of the room by a second individual, the second individual has a legitimate expectation of

privacy in the room.[2] *Caldwell v. State,* 583 N.E.2d 122, 125 (Ind.1991); *see also Ceroni,* 559 N.E.2d at 373.

In this case, the registered guest, Melanie Stover, was not in the hotel room when Officer Arnold arrived. There is no evidence in the record to suggest that Stover gave Armour permission to be in the room, and we find that his mere presence there does not, without more, infer such permission. Therefore, Armour did not have an expectation of privacy in the hotel room. *See Caldwell,* 583 N.E.2d at 125; *Ceroni,* 559 N.E.2d at 373; *Haller,* 454 N.E.2d at 80–81.

### B. *Warrantless Search and Arrest*

 Although Armour lacked standing to challenge the search, we will consider his claim that the search was illegal under the Fourth Amendment on its merits.[3] "Under the federal constitution, searches and seizures 'conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment- subject only to a few specifically established and well-delineated exceptions.' " *Middleton v. State,* 714 N.E.2d 1099, 1101 (Ind.1999) (citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). The State carries the burden of demonstrating that a warrantless search or seizure falls within one of the exceptions. *Id.; see also Taylor v. State,* 659 N.E.2d 535, 537 (Ind.1995). Under the plain view doctrine, the warrantless sei-

zure of evidence is not unreasonable if the following conditions exist:

> (1) 'the officer [must] not have violate[d] the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed'; (2) the 'incriminating character' of the evidence must be 'immediately apparent'; and (3) the officer must 'have a lawful right of access to the object itself.'

*Middleton,* 714 N.E.2d at 1101 (citing *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)).

 In this case, Officer Arnold arrived at the hotel room to execute an arrest warrant for check deception for a Melanie Stover, who was perhaps the same Melanie Stover who was the registered guest for the room. Before he knocked on the door of the room, Armour opened the door. Through the open doorway beyond Armour, Officer Arnold saw a female in the room who matched the description on the arrest warrant. In attempting to determine whether the female was in fact Melanie Stover, Officer Armour stepped into the room to obtain identification information. It was not improper for him to do so. *See State v. Estep,* 753 N.E.2d 22, 26 (Ind.Ct.App.2001) ("[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.") (citing *Payton v. New York,* 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). This is especially true under the facts and

---

**2.** But see *Haller v. State,* 454 N.E.2d 76, 80–81 (Ind.Ct.App.1983) ("[a] mere visitor who asserted neither a property nor a possessory interest in" a hotel room "has no standing to challenge the warrantless entry into" that room).

**3.** Armour also argues that the search violated Article I, Section 11 of the Indiana Constitution. However, although he cites to the rele-

vant provision of that section, Armour does not make any specific argument under that section and fails to recognize that a claim under Section 11 requires a different analysis than the federal Fourth Amendment. Therefore, his state constitutional claim is waived. *See Williams v. State,* 724 N.E.2d 1093, 1097 n. 5 (Ind.2000).

circumstances here, where Armour had already opened the door to the room and the physical appearance of one of the room's occupants matched the description in the warrant to be served.

■ Upon entering the room to establish positive identification of its occupants, Officer Arnold observed a crack pipe lying on the bed. Officer Arnold testified that based on his training and experience, he immediately recognized the pipe as an item used with narcotics. He also saw a black shaving bag on the floor with two test tubes sticking out of it, two glasses with rubbing alcohol in them on the bedside table, a white or yellow residue on that table, and plastic bags, one of which appeared to contain marijuana. All of these items were in the plain view of Officer Arnold as he properly stepped inside the open doorway in order to obtain positive identification of the room's occupants. Based upon these facts and circumstances, Officer Arnold's warrantless seizure of the evidence in the hotel room did not violate the Fourth Amendment of the United States Constitution.

■ Finally, Armour argues that his arrest and the search of his person incident to arrest violated the Fourth Amendment of the United States Constitution. A warrantless arrest of the defendant is permissible when, at the time of the arrest, the arresting officer has probable cause to believe the defendant committed a felony. *Bergfeld v. State*, 531 N.E.2d 486, 489 (Ind.1988). "Probable cause exists when, at the time of the arrest, the arresting officer has knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that the defendant committed the criminal act in question." *Id.* at 490. The amount of evidence needed to meet the probable cause requirement is determined on a case-by-case basis. *DiTommaso v. State*,

566 N.E.2d 538, 540 (Ind.1991). A police officer may execute a warrantless search of a person if the search is incident to a lawful arrest. *Stevens v. State*, 701 N.E.2d 277, 280 (Ind.Ct.App.1998).

Here, Officer Arnold saw in plain view a crack pipe lying on the bed, a black bag with test tubes in it, glasses with rubbing alcohol in them on the bedside table, several plastic bags, a plastic bag with what appeared to be marijuana in it, and a white or yellow residue on the table. After making these observations, it was reasonable for Officer Arnold to believe that Armour and the other individuals in the hotel room had committed the crimes they were arrested for: possession of cocaine, which is at the minimum a Class D felony, and possession of drug paraphernalia, a Class A infraction. Armour's warrantless arrest therefore was not in violation of the Fourth Amendment. Also, because Officer Arnold found the cocaine at issue during a search of Armour incident to his lawful arrest, the warrantless search of Armour did not violate his Fourth Amendment rights.

## II. Sufficiency of the Evidence

■ Finally, Armour argues that there is insufficient evidence to convict him of possession of cocaine, as a Class C felony, because the State failed to prove that he had constructive possession of at least three grams of cocaine. Our standard of review for sufficiency claims is well settled. We do not reweigh the evidence or assess the credibility of witnesses. *Thompson v. State*, 728 N.E.2d 155, 159 (Ind.2000). We look to the evidence and the reasonable inferences to be drawn therefrom that support the judgment. *Id.* Where there is substantial evidence of probative value to support the judgment, it will not be disturbed. *Jordan v. State*, 691 N.E.2d 487, 489 (Ind.Ct.App.1998).

Indiana Code section 35–48–4–6 provides that "[a] person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses cocaine (pure or adulterated), . . . commits possession of cocaine." The offense is a Class C felony if "the amount of the drug involved (pure or adulterated) weighs three (3) grams or more." *Id.* A conviction for possession of cocaine may be supported by proof of actual or constructive possession. *Goliday v. State,* 708 N.E.2d 4, 6 (Ind.1999). "In order to prove constructive possession, the State must show that the defendant has both (1) the intent to maintain dominion and control and (2) the capability to maintain dominion and control over the contraband." *Id.*

The State must demonstrate the defendant's knowledge of the presence of the cocaine to prove the intent element. *Id.* "This knowledge may be inferred from either the exclusive dominion and control over the premise containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband." *Id.* (citing *Taylor v. State,* 482 N.E.2d 259, 261 (Ind. 1985) (quoting *Woods v. State,* 471 N.E.2d 691, 694 (Ind.1984))). The defendant's proximity to contraband "in plain view" is an "additional circumstance" that will support an inference of intent in this context. *Lampkins v. State,* 685 N.E.2d 698, 700 (Ind.1997) (citations omitted). Also, "a substance can be possessed jointly by the defendant and another without any showing that the defendant had actual physical control thereof." *Godar v. State,* 643 N.E.2d 12, 14 (Ind.Ct.App.1994), *trans. denied.* However, when possession is nonexclusive the State must demonstrate that the defendant had actual knowledge of the presence and illegal character of the substance. *Id.*

To prove that the defendant had the capability to maintain dominion and control over the contraband, the second element of constructive possession, the State must demonstrate that the defendant is able to reduce the controlled substance to his personal possession. *Whitney v. State,* 726 N.E.2d 823, 826 (Ind.Ct.App. 2000). "Proof of a possessory interest in the premises in which the illegal drugs are found is adequate to show the capability to maintain dominion and control over the items in question." *Id.* (citing *Davenport v. State,* 464 N.E.2d 1302, 1307 (Ind.1984)).

In this case, although Armour was not a registered guest of the hotel, and the registered guest was not in the room, the cocaine seized was in plain view and in close proximity to Armour. While his possession of the cocaine was not exclusive, he clearly was aware that the cocaine was in the room and could have reduced the cocaine to his personal possession. Also, Armour had 2.9052 grams of cocaine in his actual possession. Based on these facts and circumstances, there was sufficient evidence to prove that Armour had constructive possession of all of the cocaine in the room.

## Conclusion

Armour did not have a legitimate expectation of privacy in the hotel room because he was not a registered guest, nor was there any evidence in the record to suggest that the registered guest had given him permission to use the room. Also, under the plain view doctrine, Officer Arnold's search of the hotel room and Armour's subsequent arrest were not in violation of the Fourth Amendment of the United States Constitution. The trial court therefore did not abuse its discretion when it denied Armour's motion to sup-

press. Finally, the evidence was sufficient to convict Armour of possession of cocaine, as a Class C felony, because the State proved that Armour had constructive possession of all of the cocaine found in the hotel room.

Affirmed.

BROOK, C.J., and RILEY, J., concur.