**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
May 14 2014, 8:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHELLE E. BUMGARNER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH B. HUTSLAR, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 38A02-1310-CR-877 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JAY SUPERIOR COURT
The Honorable Max C. Ludy, Jr., Judge
Cause No. 38D01-1303-CM-59

**May 14, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Kenneth B. Hutslar worked as a trustee while incarcerated at the Jay County Jail. After Hutslar told law enforcement officials that he found a cell phone in the laundry room, an investigation commenced because prisoners are prohibited from having cell phones at the jail.

The jail officers found the phone as Hutslar described, and it was determined that Hutslar's last four social security digits unlocked the code to the phone. The officers found text message exchanges between Hutslar and his girlfriend, Paula Champ, and one of the numbers on the cell phone appeared several times on the inmate call log from Hutslar's cell block. Champ visited Hutslar many times at the jail, and a detective who listened to a recorded conversation between Hutslar and Champ learned that Champ left the phone in a jail trash can where a jail trustee could retrieve it.

In light of these circumstances, we conclude that the evidence was sufficient to support Hutslar's conviction for Possession of a Cellular telephone or Device while Incarcerated,[1] a class A misdemeanor. Thus, we affirm the judgment of the trial court.

## FACTS

Hutslar was an inmate at the Jay County Jail in January 2013. At the time, Hutslar was a jail "trustee," an inmate who assists jail staff with chores including cleaning, laundry, and kitchen duties. Trustees have access to various locations in the jail and are not supervised while they are performing their duties.

---

[1] Ind. Code § 35-44.1-3-8.

On January 7, 2013, a situation arose at the jail that involved contraband, namely marijuana and paraphernalia that had been found in the jail's linen room. Correctional Officer Eugene Schilling searched the linen area for those items. That same day, Hutslar approached him and asked whether they had "found the cell phone." Tr. p. 137. Officer Schilling responded that he did not know anything about a cell phone. In response, Hutslar told Officer Schilling that he wanted to talk with one of the chief deputies about his credit time hearing. Chief Deputy Bicknell was already gone for the day, so Officer Schilling escorted Hutslar to Sheriff Newton's office.

Officer Schilling stayed in the office while Hutslar spoke with Sheriff Newton. Hutslar informed Sheriff Newton that he wanted to discuss his credit time hearing and that he would tell him exactly where the cell phone was located. Hutslar then informed Sheriff Newton that the cell phone was in the kitchen, underneath a stack of milk cups. Officer Schilling searched the area and found the phone precisely where Hutslar stated that the phone would be. Officer Schilling retrieved the cell phone and brought it to the Sheriff's office.

Detective Patrick Wells of the Jay County Sheriff's Office was directed to investigate how the cell phone had reached a secure area of the jail. The phone had a lock code, so he began by attempting to unlock it. Other investigators were in the office with Detective Wells and discussed the fact that individuals often use the last four digits of their social security number as a four-digit PIN on their cell phones. Using a list of the

3

last four digits of each jail trustee's social security number, Detective Wells was able to unlock the telephone with the last four digits of Hutslar's social security number.

When the phone was unlocked, Detective Wells reviewed the text messages and contact numbers. He cross-referenced the numbers on the phone with calls from the "legitimate" inmate call log. Tr. p. 168. One of the numbers on the cell phone appeared several times on the inmate call log from Hutslar's cell block.

Detective Wells listened to recordings of the calls to the number and determined that it was Hutslar's voice that he heard on the recording and an unidentified female voice. Detective Wells subsequently checked Hutslar's visitation log and determined that most of Hutslar's visits from females were from his girlfriend, Paula Champ.

Detective Wells decided to interview Champ to determine if she had been the source of the cell phone. He subsequently determined that the frequently occurring number on the cell phone belonged to Champ and that at least one of the text messages told Champ that he loved her. Detective Wells also learned that Champ had smuggled the cell phone into the jail by leaving it in a restroom trash can in one of the public areas, where one of the trustees could retrieve it. Detective Wells reviewed recordings of visits between Hutslar and Champ and observed them discussing the cell phone in a "lightly veiled code," including Champ's verification of the phone's lock code for Hutslar. Id. at 172.

During one of the visits, Hutslar and Champ discussed a cell phone that Champ had purportedly acquired for her son. Hutslar asked Champ for the phone's security

4

code, and she replied that Hutslar already knew the code because it was Hutslar's social security number. Hutslar repeated the number to Champ, whereupon Champ confirmed that it was the proper number that could be used to "unlock" the phone. Id. at 173.

On March 5, 2013, Hutslar was charged with possession of a cellular telephone or device while incarcerated, a class A misdemeanor. Following a jury trial on September 25, 2013, Hutslar was found guilty as charged and sentenced to nine months of incarceration.[2] Hutslar now appeals.

## DISCUSSION AND DECISION

Hutslar challenges the sufficiency of the evidence, claiming that his conviction must be reversed because he was never found in actual possession of the phone. Moreover, Hutslar argues that he "was not close enough to the cell phone [to support] a finding of constructive possession." Appellant's App. p. 5. As a result, Hutslar argues that his conviction must be reversed.

In reviewing challenges to the sufficiency of the evidence, we do not reweigh the evidence or assess the credibility of witnesses. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). Rather, we view the evidence most favorable to the verdict. Id. Evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. Townsend v. State, 934 N.E.2d 118, 126 (Ind. Ct. App. 2010).

A defendant's conviction can be sustained by proof of either actual or constructive possession. Armour v. State, 762 N.E.2d 208, 216 (Ind. Ct. App. 2002). An item can be

---

[2] Champ ultimately pleaded guilty to the offense of Trafficking with an Inmate. Tr. p. 162-63.

possessed jointly by the defendant and another without any showing that the defendant had actual physical control thereof.  Hundley v. State, 951 N.E.2d 575, 580 (Ind. Ct. App. 2011), trans. denied.

To prove constructive possession in this case, the State is only required to show that Hutslar had knowledge of the cell phone's presence as well as the intent and capability to maintain dominion and control over it.  State v. Emry, 753 N.E.2d 19, 22 (Ind. Ct. App. 2001).  This factor may be established by circumstantial evidence.  Id.  Put another way, the evidence establishing Hutslar's constructive possession of the cell phone will be sufficient to support his conviction if an inference may reasonably be drawn from that evidence to support the verdict.  Id.

As discussed above, the evidence established that Hutslar knew that the phone was located in the laundry room, even before the jail staff knew that a hidden phone even existed at the jail.  While working as a jail trustee, Hutslar had access to the kitchen where the cell phone was hidden.  The lock code on the phone corresponded with the last four digits of Hutslar's social security number, Champ took the phone into the jail, and most of Hutslar's text messages were to her, including an expression of love.  Hutslar and Champ were also heard during a recorded visit discussing the cell phone and its lock code in a lightly veiled code.  Id. at 162-63, 168, 170-71.

Finally, even though Hutslar contends that the phone could also have been possessed by other inmates, the State was only required to prove that Hutslar possessed the phone, whether or not his possession was exercised with another person or persons.

6

Indeed, it is possible for multiple individuals to possess the same item. In short, the conviction of one defendant for possessing an item does not preclude a finding that another defendant possessed the same item. Godar v. State, 643 N.E.2d 12, 14 (Ind. Ct. App. 1994). In this case, Hutslar had knowledge of the cell phone's presence and had the capability to maintain dominion and control over it. Hutslar informed the jail personnel of the phone's exact location and discussed the lock code with Champ who brought the cell phone to the jail. In our view, these circumstances sufficiently proved that Hutslar was in constructive possession of the cell phone.

In short, Hutslar's arguments to the contrary are merely invitations for us to reweigh the evidence and reevaluate the credibility of the witnesses, which we will not do. Joslyn v. State, 942 N.E.2d 809, 811 (Ind. 2011). Thus, we decline to set aside Hutslar's conviction.

The judgment of the trial court is affirmed.

BARNES, J., and CRONE, J., concur.