## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 28 2016, 7:16 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Leeman
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Alan E. Dewitt, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 28, 2016 <br><br> Court of Appeals Case No. 09A04-1508-CR-1179 <br><br> Appeal from the Cass Circuit Court <br><br> The Honorable Leo Burns, Judge <br><br> Trial Court Cause No. 09C01-1504-F5-28 |

**Altice, Judge.**

### Case Summary

[1]   Alan E. Dewitt appeals his convictions for Dealing in Methamphetamine, a

Level 5 felony; Possession of Chemical Reagents or Precursors with Intent to

Manufacture a Controlled Substance, a Level 6 felony; Maintaining a Common Nuisance, a Level 6 felony; and Possession of Paraphernalia, a Class A misdemeanor. Dewitt was sentenced to an aggregate term of six years incarceration. On appeal, Dewitt presents three issues for our review:

1. Did the trial court abuse its discretion in admitting certain testimony into evidence?

2. Did the State present sufficient evidence to establish constructive possession?

3. Do Dewitt's convictions violate the prohibition against double jeopardy?

We affirm.

## Facts & Procedural History

On March 31, 2015, Officer Flaude Dillon of the Logansport Police Department, who also serves on the department's meth suppression unit, received a tip concerning Dewitt and Jesse Dewitt (Jesse) from a fellow narcotics officer. The information prompted Officer Dillon to review records from the national pseudoephedrine database.[1] Because Officer Dillon considered the quantity of pseudoephedrine purchased by both Dewitt and

---

[1] Each time an individual seeks to make a retail purchase of a product containing pseudoephedrine, the individual must present his or her driver's license. Information regarding the purchase, including the individual's name, address, driver's license number, what product containing pseudoephedrine was purchased, and the time, date, and location of the purchase, is collected and stored in the database.

Jesse to be excessive, he reviewed BMV records for identification purposes. The BMV records for Jesse indicated that there was an active warrant for her arrest from Cass County. Given this information, Officer Dillon contacted Cass County Sheriff's Deputies Josh O'Connor and Branson Eber and informed them that he suspected Dewitt and Jesse were manufacturing methamphetamine and he was aware of Jesse's outstanding warrant.

[4] Officer Dillon, along with Officer Tyler Preston, began surveillance around 8:30 p.m. at Dewitt and Jesse's residence located at 2209 East Wabash Road, Logansport. Over the course of the next two hours, no one was seen leaving or entering the residence. At approximately 10:30 p.m., Officers Dillon and Preston were joined by Deputies O'Connor and Eber, and the four approached the residence.

[5] The officers knocked and announced themselves as law enforcement. Deputies O'Connor and Eber were on the front porch, Officer Dillon was on the east side of the residence near a sliding glass door, and Officer Preston was positioned at the back door. All of the windows to the home were covered with curtains, blankets, or wood. As they approached, Deputy Eber, who had investigated ten to fifteen methamphetamine labs, testified that he detected what he described as the distinct smell of "sweet ammonia" he associated only with the manufacture of methamphetamine. *Transcript Vol. 1* at 85. After the officers knocked on the door, they observed Jesse pull back a window covering and then quickly move toward the back of the residence.

[6]     After waiting a few seconds for someone to respond, the officers forced entry by kicking in the front door. Dewitt came into the front room and took control of a dog as directed by the officers. They then conducted a sweep through the house and found Jesse in a back bedroom. Jesse was arrested on the outstanding warrant and removed from the residence. In plain view, the officers observed a white powdery substance, lithium batteries, and a partially exposed syringe near a bed. Dewitt was detained while the officers obtained a search warrant. While waiting for the warrant, Cass County Sheriff's Deputy Patrick Zeider, who is a certified clandestine lab technician, arrived at the residence. Deputy Zeider testified that he could smell a chemical odor he associated with methamphetamine manufacturing outside of the residence.

[7]     After the search warrant was obtained, officers searched Dewitt's house. They found numerous items scattered throughout the house that are either a necessary ingredient or precursor for manufacturing methamphetamine. Specifically, in the living room visibly lying among papers, Deputy Zeider found clear plastic tubing as well as tubing that had been burned or had corroded in a manner consistent with prior use in a methamphetamine lab. He also found in the living area a container of salt and an open tool box that had a small glass container containing ammonium nitrate as well as additional clear plastic tubing.[2] A Coleman fuel can (organic solvent) was readily visible lying

[2] Deputy Zeider testified that ammonium nitrate is commonly found inside a cold compress and explained how such is used in the process for manufacturing methamphetamine.

on the bottom of an open shelf that was located in the living area. Deputy Zeider performed a test on the fuel can that indicated the presence of ammonia gas therein. Additional tests conducted by Deputy Zeider informed him that, more specifically, the ammonia was anhydrous ammonia.

[8] In the bedroom, Deputy Zeider found three used syringes in an eyeglasses case. He also found three spoons (one of which had a white residue) lying in various places in the bedroom and four lithium batteries. In addition, Deputy Zeider found lying in the open a pen with a straw attached that contained a white residue later determined to be methamphetamine. Deputy Zeider also found inside a purse a receipt from Walgreens showing that Jesse had been blocked from purchasing a product containing pseudoephedrine on March 31.[3]

[9] Deputy Zeider testified as to the significance of each item he found in Dewitt's home with respect to how it is used in the process of manufacturing methamphetamine or as a means to introduce methamphetamine into the body. Deputy Zeider was permitted to testify, over Dewitt's objection, that the presence of ammonia gas in the fuel can indicated that methamphetamine had been manufactured.[4] He explained that "there is no other reason for it, for

---

[3] In instances where an individual has already purchased the maximum allowed by law within a given time period, the individual will be prohibited from making additional purchases of pseudoephedrine until the set period elapses. When this occurs, the individual is blocked, i.e., prevented from completing the purchase.

[4] The trial court sustained Dewitt's objection to the State's attempt to elicit testimony from Deputy Zeider as to his opinion regarding Dewitt's intent to manufacture methamphetamine.

ammonia gas of [sic] being in organic solvent, none, whatsoever." *Transcript Vol. 1* at 193.

[10] Prior to the search of the residence, Deputy Zeider, like Officer Dillon, had reviewed the national pseudoephedrine database. He learned that Dewitt had made at least fourteen purchases within the preceding twelve-month period and that his most recent purchase was on March 26, 2015. As for Jesse, the database showed that over the course of the prior twelve months, she had made twenty-one purchases and had been blocked from purchasing on two occasions, the most recent block occurring on March 31. Jesse was blocked from buying pseudoephedrine because she had exceeded the maximum amount allowed to be purchased by an individual, which is 3.6 grams in a day or 7.2 grams in 30 days' time.[5]

[11] Believing the amount of pseudoephedrine purchased by Dewitt and Jesse was significant, Deputy Zeider reviewed surveillance video recordings taken from the security system at the Walgreens[6] in Logansport. Deputy Zeider confined his investigation to the times documented in the pseudoephedrine database as the times Dewitt and/or Jesse purchased or attempted to purchase pseudoephedrine from the beginning of 2015 up to March 31. In each of ten instances reviewed by Deputy Zeider, Dewitt and/or Jesse can be seen entering

---

[5] *See* Ind. Code § 35-48-4-14.7(e).

[6] Walgreens was not the only location identified in the database where Dewitt and Jesse had purchased pseudoephedrine.

the store and making or attempting to make a purchase at the pharmacy counter.

[12] On April 1, 2015, the State charged Dewitt with Count I, dealing in methamphetamine (by manufacturing), a Level 5 felony; Count II, possession of chemical reagents or precursors with intent to manufacture a controlled substance, a Level 6 felony; Count III, maintaining a common nuisance, a Level 6 felony; and Count IV, possession of paraphernalia, a Class A misdemeanor. A two-day jury trial was held on June 22 and 23, 2015. The jury ultimately found Dewitt guilty as charged. At a July 16, 2015 sentencing hearing, the trial court sentenced Dewitt to concurrent terms of six years on Count I, two years each on Counts II and III, and one year on Count IV, for an aggregate sentence of six years. Additional facts will be provided where necessary.

## Discussion & Decision

### 1. Admission of Evidence

[13] Dewitt argues that the trial court abused its discretion in permitting Officer Zeider to give his opinion that the presence of ammonia gas[7] in the Coleman fuel container established that the substance therein had been used to manufacture methamphetamine. We review the admission of evidence for an

---

[7] Deputy Zeider relied upon the results of the Draeger test he conducted at the scene, which indicated the presence of ammonia in the Coleman fuel can recovered from Dewitt's residence.

abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001).

[14] Indiana Evidence Rule 702 governs the admissibility of testimony by expert witnesses. It provides that:

> (a) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand or to determine a fact in issue.

> (b) Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles.

Evid. R. 702. The trial court acts as a gatekeeper when determining the admissibility of opinion evidence under Rule 702. *Estate of Borgwald v. Old Nat'l Bank*, 12 N.E.3d 252, 257 (Ind. Ct. App. 2014). "The proponent of expert testimony bears the burden of establishing the foundation and reliability of the scientific principles." *Doolin v. State*, 970 N.E.2d 785, 787 (Ind. Ct. App. 2012). "In determining whether scientific evidence is reliable, the trial court must determine whether the evidence appears sufficiently valid, or, in other words, trustworthy, to assist the trier of fact." *Id*. at 788 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 n. 9 (1993)).

[15] Dewitt does not challenge Deputy Zeider's qualifications as an expert. Deputy Zeider testified that he is a certified clandestine lab technician who received training at Quantico, Virginia at the FBI Academy and who has years of experience. Dewitt also does not challenge the reliability of the results of the Draeger test Deputy Zeider performed, which test indicated that ammonia was present in the Coleman fuel can. Dewitt's argument is that the State presented no scientific basis to support Deputy Zeider's opinion that the presence of ammonia indicated that contents in the fuel can had been used to manufacture methamphetamine. More specifically, Dewitt argues that the presence of ammonia gas inside the Coleman fuel container "does not reliably prove that the liquid inside the can has been used to manufacture methamphetamine." *Appellant's Brief* at 10.

[16] The trial court overruled Dewitt's objection, finding that the State had presented a sufficient foundation regarding Deputy Zeider's qualification as an expert and as such, he was permitted to testify and give his opinion. We agree with the trial court's assessment. As properly determined by the trial court, Deputy Zeider's training and experience qualified him as an expert witness. Deputy Zeider testified about various tests, including the Draeger test, he performed on the contents of the fuel can and the results thereof. It was therefore permissible for Deputy Zeider to give his opinion, that based on his training and experience, the presence of ammonia gas in the fuel can indicated that the contents of the fuel can had been used to manufacture methamphetamine. As noted above, Deputy Zeider explained that "there is no

other reason for it, for ammonia gas of [sic] being in organic solvent, none, whatsoever." *Transcript Vol. 1* at 193.

[17] The trial court correctly determined that Deputy Zeider's opinion testimony was subject to cross-examination, presentation of contrary evidence, and/or argument of counsel. Ultimately, the reliability of Deputy Zeider's opinion was an issue to be resolved by the trier of fact. *See Estate of Borgwald*, 12 N.E.3d at 257 (quoting *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 460 (Ind. 2001)) (noting that "[o]nce the admissibility of the expert's opinion is established under Rule 702, 'then the accuracy, consistency, and credibility of the expert's opinions may properly be left to vigorous cross-examination, presentation of contrary evidence, argument of counsel, and resolution by the trier of fact'"). We therefore conclude that the trial court did not abuse its discretion in permitting Deputy Zeider to testify that based on the results of the Draeger test, it was his opinion that the substance in the fuel can recovered from Dewitt's residence had been used to manufacture methamphetamine.

## 2. Constructive Possession

[18] Dewitt argues that the State presented insufficient evidence to prove that he had control over the contraband found inside his home. Our standard of reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

> When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. The evidence—

even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004).

*Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012).

[19] Each crime for which Dewitt was convicted includes an element of possession or control. Possession may be either actual or constructive. Actual possession is proven by direct physical control. *Henderson v. State*, 715 N.E.2d 833, 835 (Ind. 1999). In the absence of actual possession, constructive possession may support a conviction. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999). Constructive possession requires proof that "the defendant has both (1) the intent to maintain dominion and control and (2) the capability to maintain dominion and control over the contraband." *Id.* "Control in this sense concerns the defendant's relation to the place where the substance is found: whether the defendant has the power, by way of legal authority or in a practical sense, to control the place where, or the item in which, the substance is found. *See Jones v.* State, 807 N.E.2d 58, 65 (Ind. Ct. App. 2004) (quoting *Allen v. State*, 798 N.E.2d 490, 501 (Ind. Ct. App. 2003)), *trans. denied.*

[20] Here, it is undisputed that Dewitt did not exercise exclusive control over the house at 2209 East Wabash Road. Nevertheless, even where possession is not exclusive, the law infers that a party in possession of the premises is capable of

exercising dominion and control over all items on the premises. *See Gee v. State*, 810 N.E.2d 338, 340-41 (Ind. 2004). In addition to evidence that Dewitt emerged from the back of the residence in his gym shorts in order to restrain the dog police encountered, the State also presented evidence through the national pseudoephedrine database that each time Dewitt purchased pseudoephedrine, the identification he provided to complete the transaction indicated that his address was 2209 East Wabash Road. This evidence is sufficient to establish that Dewitt had possession of the residence located at 2209 East Wabash Road and therefore, had the capability to maintain dominion and control over the premises and the contraband found therein.

[21] We next consider the intent aspect. To prove the intent element of constructive possession, the State must demonstrate a defendant's knowledge of the presence of the contraband. *See Armour v. State*, 762 N.E.2d 208, 216 (Ind. Ct. App. 2002), *trans. denied*. Where control over the premises is non-exclusive, as here, knowledge may be inferred from evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband. *Id*. Such additional circumstances include, but are not limited to, the following: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) location of substances like drugs in settings that suggest manufacturing; (4) proximity of the contraband to the defendant; (5) location of the contraband within the defendant's plain view; and (6) the mingling of the contraband with other items owned by the defendant. *Macklin v. State*, 701 N.E.2d 1247, 1251 (Ind. Ct. App. 1998). "[A] substance can be possessed

jointly by the defendant and another without any showing that the defendant had actual physical control thereof." *Armour*, 762 N.E.2d at 216 (citing *Godar v. State*, 643 N.E.2d 12, 14 (Ind. Ct. App. 1994), *trans. denied*).

[22] Many of the items, including the plastic tubing, salt, lithium batteries, ammonium nitrate, fuel container, and spoons with residue were visibly lying in the main living area or the back bedroom. Although the nature of each item may seem innocuous standing alone, taken together they suggest a manufacturing setting consistent with the one-pot method for manufacturing methamphetamine described by Deputy Zeider. Indeed, Deputy Zeider explained that the plastic tubing was corroded in a manner consistent with having been previously used in a methamphetamine lab and residue found on the pen/straw device tested positive for methamphetamine. Two officers testified that inside the residence they noticed the distinct smell of ammonia that they associated only with the manufacture of methamphetamine. In addition, used syringes and a straw/pen device with methamphetamine residue were found in plain view in the residence.

[23] An additional circumstance suggesting Dewitt had knowledge of the presence of items found within his residence is the significant amount of pseudoephedrine-containing products he had purchased. Deputy Zeider testified that in his opinion, the amount of pseudoephedrine products gave rise to a suspicion of methamphetamine manufacturing. The State's evidence permits an inference that Dewitt knew of the presence of the contraband and intended to exercise control over it. *See Floyd v. State*, 791 N.E.2d 206, 211 (Ind.

Ct. App. 2003) (finding that evidence of furtive gestures, incriminating statements, personal property in close proximity to contraband, drug manufacturing setting supported inference that defendant had constructive possession of the contraband), *trans. denied*.

### 3. Double Jeopardy

[24] Dewitt argues that his convictions violate the double jeopardy clause of the Indiana Constitution. Article 1, section 14 of the Indiana Constitution prohibits double jeopardy, providing that "[n]o person shall be put in jeopardy twice for the same offense." As our Supreme Court has explained:

> In *Richardson v. State*, 717 N.E.2d 32 (Ind.1999)[,] this Court concluded that two or more offenses are the same offense in violation of article 1, section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Under the actual evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. *Id*. at 53. To find a double jeopardy violation under this test, we must conclude that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id*. The actual evidence test is applied to all the elements of both offenses. "In other words . . . the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential

elements of a second offense." *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).

*Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013) (last alteration original). Whether multiple convictions violate double jeopardy principles is a question of law that is reviewed de novo. *Goldsberry v. State*, 821 N.E.2d 447, 458 (Ind. Ct. App. 2005 (citing *Spears v. State*, 735 N.E.2d 1161, 1166 (Ind. 2000)).

[25] Here, Dewitt was charged with and convicted of dealing in methamphetamine by manufacturing under Ind. Code § 35-48-4-1.1(a)(1), which defines the crime as "knowingly or intentionally manufactur[ing] methamphetamine." I.C. § 35-48-1-18 defines "manufacture" as:

> the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

[26] Dewitt was also charged and convicted of possession of chemical reagents or precursors. In addition to proving that Dewitt "possess[ed] two or more chemical reagents or precursors", the State was required to prove, as with the dealing charge, that he did so "with the intent to manufacture a controlled substance." *See* I.C. § 35-48-4-14.5.

[27] During the State's closing argument, the State directed the jury that "the same evidence [that] indicates intent to manufacture supports [the possession of

precursors] charge as well." *Transcript Vol. 2* at 18. Dewitt argues the State's invitation that the jury consider the "same evidence" for both the dealing charge and the possession charge created a reasonable possibility that the jury used the same facts to reach both convictions. Dewitt thus argues that his convictions for both dealing methamphetamine and possession of precursors violate the prohibition against double jeopardy.

[28]     Our precedents "instruct that a 'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008) (citing cases). The reasonable possibility standard "fairly implements the protections of the Indiana Double Jeopardy Clause and also permits convictions for multiple offenses committed in a protracted criminal episode when the case is prosecuted in a manner that insures that multiple guilty verdicts are not based on the same evidentiary facts." *Richardson*, 717 N.E.2d at 53 n.46. The existence of a "'reasonable possibility' turns on a practical assessment of whether the [fact finder] may have latched on to exactly the same facts for both convictions." *Lee*, 892 N.E.2d at 1236. We evaluate the evidence from the jury's perspective and may consider the charging information, jury instructions, and arguments of counsel. *Id*. at 1234.

*Garrett v. State*, 992 N.E.2d at 719-20.

[29]     During closing arguments, the State's summary of the evidence as it related to the dealing charge focused, in part, on the fact that the "finished product", i.e., methamphetamine, had been found in Dewitt's residence. *Transcript Vol. 2* at 15. To prove that manufacturing had occurred, the State directed the jury to consider Deputy Zeider's testimony regarding a chemical synthesis—

specifically, that anhydrous ammonia had been introduced into the organic solvent. As evidence of Dewitt's intent to manufacture, the State pointed out that he had purchased a substantial amount of pseudoephedrine and asked the jury to consider such evidence in light of Deputy Zeider's testimony that the amount Dewitt purchased was consistent with someone who was manufacturing methamphetamine.

[30] With regard to the possession charge, the preliminary and final instructions informed the jury that Dewitt had to have possessed organic solvent and lithium metal.[8] In closing arguments, the State noted the testimony and evidence that organic solvent and lithium metal, which would have been extracted from batteries, were found in Dewitt's house. With regard to the intent to manufacture element of the possession of precursors charge, we acknowledge that the State invited the jury to consider the "same evidence." *Transcript Vol. 2* at 18.

[31] Reading the State's comment in context, leads us to conclude that the State sufficiently parsed the evidence such that the intent element of both offenses was the only element that was proved by the "same evidence." *Id*. In summarizing the evidence as it related to the possession of precursors charge, the State noted the two specified precursors were found in Dewitt's home. The State then argued that Dewitt's "*intent* to manufacture," was established by "the

---

[8] The charging information alleged that Dewitt possessed "organic solvent and ammonium nitrate." *Appellant's Appendix* at 16.

same evidence [that] indicates *intent* to manufacture supports [the possession of precursors] charge as well." *Transcript Vol. 2* at 18 (emphasis supplied).

[32] Aside from the same evidence to establish the intent element of both offenses, separate and distinct facts were required and relied upon by the State to prove that manufacturing had occurred for purposes of proving the dealing charge. Moreover, the State's reference to the organic solvent in summarizing the evidence in support of the dealing conviction was to show that a chemical synthesis had occurred by virtue of the introduction of anhydrous ammonia into it. The actual possession of the organic solvent was used to prove the possession of precursors charge. In addition, for the possession charge, the final instructions and the State's closing argument directed the jury to find that Dewitt also possessed lithium. Possession of lithium was not even suggested as evidence supporting the dealing charge and was not necessary to support that conviction in light of other evidence. We thus conclude that there was no reasonable possibility that the jury considered the same evidence to establish all of the elements of both offenses. There is no double jeopardy violation.

[33] Dewitt vaguely challenges his convictions for maintaining a common nuisance[9] and possession of paraphernalia[10] as being in violation of double jeopardy principles. For the former, the State argued that there was evidence to prove that manufacturing had occurred at Dewitt's residence and further focused its attention on the distinct odor in and outside the residence, which two law enforcement officers described as associating only with the manufacture of methamphetamine. With regard to the latter, the State pointed to the discovery of used syringes in the bedroom as well as a straw device containing a white residue that tested positive for methamphetamine. Given the separate and distinct elements of each of these crimes and the State's reliance upon separate

---

[9] The crime of maintaining a common nuisance is defined, in pertinent part, as follows:

> (b) A person who knowingly or intentionally maintains a building, structure, vehicle, or other place that is used one (1) or more times:
>
> * * *
>
> (2) for unlawfully:
>
>> (A) manufacturing;
>>
>> (B) keeping;
>>
>> (C) offering for sale;
>>
>> (D) selling;
>>
>> (E) delivering; or
>>
>> (F) financing the delivery of;
>
> controlled substances, or items of drug paraphernalia as described in IC 35-48-4-8.5;
>
> commits maintaining a common nuisance, a Level 6 felony.

I.C. § 35-48-4-13(b)(2).

[10] To convict Dewitt of possession of paraphernalia, the State was required to prove that Dewitt possessed a raw material, an instrument, a device, or other object that he intended to use for introducing a controlled substance into his body. *See* I.C. § 35-48-4-8.3.

and distinct facts to prove them, we conclude that Dewitt has failed to establish a double jeopardy violation.

[34]    Dewitt also argues that his convictions violate I.C. § 35-38-1-6, which "reinforces" the prohibition of Indiana's Double Jeopardy Clause that prohibits a trial court "from sentencing a defendant for an offense and a lesser included offense charged in separate counts." *Hopkins v. State*, 759 N.E.2d 633, 639 (Ind. 2001). Specifically, I.C. § 35-38-1-6 provides that if a defendant is charged with an offense and an included offense in separate counts and is found guilty of both counts, "judgment and sentence may not be entered against the defendant for the included offense." An "included offense" is defined as an offense that:

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
>
> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
>
> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Ind. Code § 35-31.5-2-168. A lesser-included offense is necessarily included within the greater offense if it is impossible to commit the greater offense without first having committed the lesser offense. *Zachary v. State*, 469 N.E.2d 744, 749 (Ind. 1984). If the evidence indicates that one crime is independent of

another crime, it is not an included offense. *Iddings v. State*, 772 N.E.2d 1006, 1017 (Ind. Ct. App. 2002). In other words, I.C. § 35-38-1-6 does not preclude conviction and sentence for two offenses so long as each offense is established by proof of an element not contained in the other. *Ingram v. State*, 718 N.E.2d 379, 381 (Ind. 1999).

[35] Dewitt's argument is based on his claim that "[a]ll four counts alleged that Dewitt was guilty because he used things to make and consume methamphetamine on or about March 31, 2015." *Appellant's Brief* at 19. Dewitt, however, overlooks the fact that different elements comprise each offense. The elements of this dealing conviction include that a person knowingly or intentionally manufacture methamphetamine. A conviction for possession of precursors requires that one knowingly or intentionally possess two or more delineated precursors. Manufacturing and possession are distinct elements that are proved by distinct evidence. Thus, contrary to Dewitt's claim, his possession of precursors conviction is not a lesser included offense of his dealing conviction.

[36] The offense of maintaining a private nuisance includes the distinct element of maintaining a building, structure, vehicle, or other place, in addition to unlawfully manufacturing, delivering, selling, etc. The offense of possession of paraphernalia is established by possessing an instrument, device, or similar item that is intended to be used to introduce a controlled substance into a person's body. Clearly each offense is established by different elements. Further, as noted above in our double jeopardy analysis, there is no reasonable possibility

that the jury would have relied upon the same evidentiary facts to establish the elements of each of these offenses. Dewitt has not established that his convictions violate I.C. § 35-38-1-6.

[37] Judgment affirmed.

[38] Robb, J. and Barnes, J., concur.